[Argued April 13, 1893; decided April 24, 1893.]

## HOUSE *v.* JACKSON.

[S. C. 32 Pac. Rep. 1027.]

1. MUTUALITY OF CONTRACT — OPTION TO PURCHASE — SPECIFIC PERFORMANCE.— One not bound by a contract cannot call upon a court to enforce specific performance thereof against the other party, by expressing a willingness to accept its terms; but an option to convey real estate or renew a lease may be specifically enforced, without any covenant or obligation to purchase or accept, if made upon a proper consideration, for when the option is accepted, the minds of the parties have met, and the contract thus becomes mutual.

2. CONSIDERATION FOR CONTRACT — OPTION TO PURCHASE.— The contract to pay the rent secured by a lease of real property is a sufficient consideration for an option in such lease to purchase the property.

3. IDEM.— Improvements made upon property under a prior lease are sufficient consideration to support an option contained in a renewal lease for the purchase of the property.

4. DESCRIPTION OF REAL PROPERTY.— A description in a deed or agreement is sufficient when it states that the property is situated on a certain island, and is known by a special name, and is more particularly described in certain deeds between parties named which are recorded in certain counties, and that the tract contains a definite number of acres. *Whiteaker* v. *Vanschoiack*, 5 Or. 113, disapproved; *Raymond* v. *Coffee*, 5 Or. 132, and *Boehringer* v. *Creigton*, 10 Or. 42, cited and approved.

5. SPECIFIC PERFORMANCE — ACTION BY ASSIGNEE.— An option to purchase land may be specifically enforced at the suit of an assignee thereof.

Multnomah County: GEO. H. BURNETT, Judge.

Action by E. House against Ellen L. Jackson and William R. Jackson for the specific performance of a contract to convey certain land. From a decree dismissing the complaint, plaintiff appeals. Reversed.

*William W. Thayer,* and *Lawrence A. McNary* (*Chas H. Carey* on the brief), for Appellant.

The rule that a court of equity will not compel the specific performance of unilateral contracts is not applicable to a case of the kind before us. Where a contract is entered into which is intended by one or both parties to

be binding upon both, and it is found that for some reason it cannot be enforced against one party,—under such circumstances the party not bound will not be allowed specific performance against the one who is, but it will be found that the rule of mutuality in no way obtains against contracts containing future options, where the option is expressly stipulated by the party sought to be bound. Mutuality attaches in such cases when the one to whom it is extended notifies the other of his acceptance: Pomeroy, Specific Performance, § 169; Waterman, Specific Performance, § 200; Fry, Specific Performance, § 291; *Boston & Me. R. R.* v. *Bartlett*, 3 Cush. 224; *Maughlin* v. *Perry*, 35 Md. 352; *Perkins* v. *Hadsill*, 50 Ill. 216; *Masten* v. *Grimes*, 88 Mo. 478; *Johnson* v. *Trippe*, 33 Fed. Rep. 530; *Moses* v. *McClain*, 82 Ala. 370; *Shollenberger* v. *Brinton*, 52 Pa. St. 51–99; *Justice* v. *Lang*, 42 N. Y. 509; *Woodruff* v. *Woodruff*, 44 N. J. Eq. 349; *Kerr* v. *Day*, 53 Am. Dec. 526; *Hall* v. *Center*, 40 Cal. 63; *Ewens* v. *Gordon*, 49 N. H. 444.

By sufficiency of description of land to enable a court of equity to enforce specific performance of contract to convey, is meant such description as discloses the intention of the parties as to the parcel to be conveyed, and not such a description as designates the exact boundaries, or dispenses with extrinsic reference: *Ragsdale* v. *Mays*, 65 Tex. 255; *Talman* v. *Franklin*, 3 Duer, 395; *Romans* v. *Langevin*, 34 Minn. 312; *Reed* v. *Hornback*, 44 J. J. Marsh. 376; *Murdock* v. *Anderson*, 4 Jones Eq. 77; *Eggleston* v. *Wagner*, 46 Mich. 610; 1 Reed, Stat. of Frauds, §§ 408, 409; Smith's Appeal, 69 Pa. St. 474.

*Samuel B. Houston*, for Respondent.

It is shown by this testimony that this tract of land is worth from five to eight thousand dollars. It would be a harsh proceeding on the part of a court of equity, after the expiration of five years, to use its extraordinary powers to compel a man to give another six thousand dollars'

worth of property for two thousand five hundred dollars, and the court should properly exercise its discretion by refusing to enforce the performance of such an agreement. There are many authorities which hold that a court will not enforce an agreement of this kind after a long delay, and where the property has greatly enhanced in value: *Gasque* v. *Small,* 2 Strob Eq. 75; Pomeroy, Specific Performance, § 38; *Powers* v. *Hale,* 5 N. H. 145; *Moore* v. *De Lancey,* 3 Cow. 445–516, *id.* 6 Johnson, Ch. 222; Story Eq. vol. II. § 769; *Harper* v. *Sexton,* 22 Iowa, 446; *M. & M. R. R. Co.* v. *Cromwell,* 91 U. S. 646; *Willard* v. *Tayloe,* 75 U. S. 557; *Marble Co.* v. *Ripley,* 10 Wall. 359; *Cooper* v. *Pena,* 21 Cal. 411. The supreme court of this state has decided that it is a matter of judicial discretion whether such a contract will be enforced: *Snyder* v. *Lehnherr,* 5 Or. 385; *Knott* v. *Stephens,* 3 Or. 271. See also *Rigg* v. *Reed,* 5 Humph. 529 (42 Am. Dec. 447); *Byron* v. *Loftus,* 39 Am. Dec. 242; *Young* v. *Daniels,* 2 Iowa, 126 (63 Am. Dec. 477).

It is laid down by all authorities, and as a universal principle that before a contract will be specifically enforced it must be mutual that it must bind both parties. Is this such a contract? It binds the lessors to sell, but nowhere by implication or averment does it bind the lessee to buy. Most all authorities hold that this kind of a contract will not be specifically enforced by a court of equity. The following authorities, it seems to me, are sufficient to establish the doctrine that the contract must be mutual: *Benedict* v. *Linch,* 1 Johnson Ch. 370 (7 Am. Dec. 484); *Dekardova* v. *Smith's Admx.* 9 Tex. 129; *Parkhurst* v. *Van Cortland,* 1 Johnson Ch. 282 (7 Am. Dec. 427); *Bodine* v. *Glading,* 21 Pa. St. 50 (59 Am. Dec. 749); *Moore* v. *Fitz Randolph,* 6 Leigh, 175 (29 Am. Dec. 208).

It is universally laid down, that a description of the land when the contract is sought to be specifically enforced, must be definite and certain: *Blankinship* v. *Spenser,* 31 W. Va. 510 (7 S. E. Rep. 433); *Westfall* v. *Cothills,* 24 W.

Va. 793; *Hollenbeck* v. *Prior*, 40 N. W. Rep. (Dak.), 347; *Preston* v. *Preston*, 95 U. S. 200; *Purson* v. *Balland*, 32 Minn. 263 (20 N. W. Rep. 163); *Asken* v. *Can*, 8 S. E. Rep. 74; *Nippolt* v. *Rammon*, 59 Minn. 372 (40 N. W. Rep. 266); *Angel* v. *Simpson*, 3 So. Rep. 758 (Ala.); *Soles* v. *Hickman*, 20 Pa. St. 334; *Lyms* v. *Hayden*, 119 Mass. 482; *Miller* v. *Campbell*, 52 Ind. 125. The same rule has been enunciated in our own supreme court: *Odell* v. *Morin*, 5 Or. 96; *Whiteaker* v. *Vanshoiack*, 5 Or. 113; *Brown* v. *Lord*, 7 Or. 311; *Wagonblast* v. *Whitney*, 12 Or. 89.

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit brought by the appellant against the respondents to compel the specific performance of a contract to sell real property, contained in the following agreement: —

"This indenture of lease made and entered into on this nineteenth day of January, 1887, by and between Ellen L. Jackson and Wm. R. Jackson, her husband, of Washington County, Oregon, parties of the first part, and J. B. Haley, of Multnomah County, Oregon, party of the second part, witnesseth: That the said parties of the first part, for and in consideration of the yearly rental of one hundred and fifty dollars, and the covenants and agreements hereinafter mentioned, lease unto said party of the second part, for the term of five years and three months from the first day of January, 1887, the following described premises to wit: That certain tract of land situated on Sauvies Island, and known as the Jackson Ranch, and more particularly described in certain deeds from Meir & Frank and Richard Hall to W. R. Jackson, and recorded in the records of Multnomah and Columbia Counties, Oregon, and containing two hundred and eighty-seven (287) acres, more or less. And the said party of the second part herein agrees to pay the said yearly rental of one hundred and fifty ($150) dollars, in the following manner, to wit: Seventy-

five ($75) dollars on the first day of July and the thirty-first (31st) day of December of each and every year during the continuance of this lease. And the said parties of the first part further agree to sell said tract of land and convey the same by a good and valid deed to the said party of the second part at any time before the expiration of this lease for the sum of twenty-five hundred ($2,500) dollars. And the said party of the second part hereby agrees that in case he fails to purchase said tract of land before the expiration of this lease, for the above stipulated consideration, he shall forfeit to the said parties of the first part all rights and claims to any improvements that he shall have made thereon. And the parties to this agreement and lease hereby bind themselves, their heirs, executors, administrators, or assigns to the faithful performance of the covenants and agreements herein mentioned.

"In witness whereof we have hereunto set our hands and seals on the day and year above written.

"ELLEN L. JACKSON. [SEAL]<br>
"WM. R. JACKSON. [SEAL]<br>
"JOHN B. HALEY. [SEAL]

"Executed in the presence of,

　"CHAS. A. BUTLER.

　"J. W. MORGAN.

"It is further stipulated and agreed by and between the parties of the first and second part in the above and foregoing lease, that all said sums of money therein agreed to be paid by said J. B. Haley, for rent or otherwise, shall be paid to the said Ellen L. Jackson, her heirs and assigns.

"ELLEN L. JACKSON. [SEAL]<br>
"WM. R. JACKSON. [SEAL]<br>
"JOHN B. HALEY. [SEAL]

"Executed in the presence of,

　"CHAS. A. BUTLER.

　"J. W. MORGAN."

It appears that J. B. Haley went into possession and occupied said premises and paid the rent due thereon until about November 30, 1889, when, in consideration of two hundred dollars, he assigned all his interest therein to one W. G. Pomeroy, that Pomeroy went into possession, paid the rent, and occupied the premises until about September 12, 1890, when, in consideration of five hundred dollars, he assigned all his interest therein to D. Reghitto and plaintiff, who went into possession thereof; that said Reghitto about December —, 1891, assigned his interest to plaintiff, who continued to occupy the premises, and paid the rent due thereon, and on January —, 1892, tendered to defendants two thousand five hundred dollars, and demanded a deed thereto; that the defendants refused to accept said tender, or to execute said deed, whereupon plaintiff deposited said amount with the clerk and commenced this suit. After the issues were completed the cause was referred to Geo. A. Brodie, Esq., who found that the equities were with the plaintiff, and that he was entitled to a decree, but the court set aside said findings, and entered a decree dismissing the complaint, from which the plaintiff appeals.

To support the decree the respondents contend— *First*, that the contract is not mutual; *second*, that the premises cannot be identified from the description; and, *third*, such contracts cannot be enforced by an assignee.

1. The rule is well established that to entitle a party to specific performance of a contract, there must have been, at the time of its execution, a mutuality, both as to the obligation and the remedy,— an agreement to buy as well as an agreement to sell,— and that a party not bound by the agreement has no right to call upon the court to enforce performance against the other party, by expressing a willingness to accept the terms of the contract: Waterman, Specific Performance, § 196. This general rule, like most others, has its apparent exceptions. "It is now well settled

that an optional agreement to convey, or to renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity, if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it": Waterman, Specific Performance, § 200. Such exception is less real than apparent, for when the option is accepted, the minds of the parties have met and agreed upon the terms of the contract, and it thus becomes mutual, and is enforceable by either party. If no consideration for the option exists, it may, upon notice to the other party, be withdrawn at any time before acceptance. In the case at bar there is no agreement on the part of Haley to purchase the property, and his option is not binding upon the defendants unless some consideration therefor existed at the time the contract was executed.

2. Was there any consideration for the option, is the first question presented. It has repeatedly been held that in a lease of real property, containing an option to purchase the same, the contract to pay the rent was a sufficient consideration to support the option. In *Souffrain* v. *Mc-Donald*, 27 Ind. 269, Elliott, J., in support of this doctrine, says: "The stipulation, on the one side, to lease the lot for a period of two years, with the right of the lessees, within that time, to purchase the same at the price and on the terms stated in the agreement, and, on the other side, to pay the rent agreed upon and to erect the fence, must be considered as constituting one entire agreement, each particular stipulation forming an inducement thereto. The agreement to pay the rent and build the fence must be deemed to have been made in consideration of as well for the privilege of, becoming the purchasers of the lot, as for its use." In *Stansbury* v. *Fringer*, 11 Gill & John. 149, real property had been leased for a term of twelve years in consideration of the payment of the taxes and of the erec-

tion of a dwelling house thereon; with an option to pur-
chase the same. In a suit for specific performance,
CHAMBERS, J., says: "When a contract consists of several
distinct and separate stipulations on one side, and a legal
consideration is stated on the other, it must be considered
that the entire contract was in the contemplation of the
parties in each particular stipulation, and formed one of
the inducements therefor, and no one stipulation can be
supposed to result from, or compensate for, the considera-
tion, or any portion of it, exclusive of other stipulations,
unless the parties have expressly so declared." In a similar
case the court in *Maughlin* v. *Perry,* 35 Md. 353, says: "As
a part of the consideration of the lease constituting the
contract between the parties, Wells, the lessor, covenanted
to sell the property to Hyson, his lessee, for one thousand
five hundred dollars, at any time during the existence
of the lease. This was a continual obligation, running
with the lease, on the part of the lessor, with the option in
the tenant to accept the same or not, within that time."

3. From the testimony of Haley, the lessee, it appears
that when the lease was executed he considered the rent
worth one hundred and fifty dollars per year, and from
this, the respondents contend that there was no considera-
tion for the option. The defendant Wm. R. Jackson
testifies that Haley had occupied the premises for a term
of five years under a prior lease, and paid the same rent
therefor, and that he had erected a house and barn thereon
which he threatened to remove if he could not secure a
renewal of the lease. Haley also testifies that he would
not have taken the present lease if it had not been for the
option, as he wanted to get the benefit of the improve-
ments he had made on the place. We think it conclusively
appears that the improvements made upon the property
under a prior lease constituted the real consideration for,
and is sufficient to support, the option contained in the
present lease.

4. The description contained in the agreement must be so definite as to show what the purchaser supposed he was contracting for, and what the vendor intended to sell. The description may be wholly or partly contained in a separate document, which, if referred to by the other portions of the written contract in such manner as to connect them, becomes a constituent part thereof. A description of the subject matter in a deed is sufficient when it complies with the maxim, *id certum est certum reddi potest:* Pomeroy, Specific Performance, §§ 152, 153. If the land has, as a tract or lot, acquired a name to distinguish it, and by which it is known, the same may be conveyed without a reference to boundary lines: Sedgwick & Wait, Trial of Title, § 461; *Radford* v. *Edwards,* 88 N. C. 347; *Truett* v. *Adams,* 66 Cal. 218 (5 Pac. Rep. 96). In the case at bar the testimony of the witnesses shows that the tract described is known as the "Jackson Ranch." It also appears that it is, or was, known as the "Joy and Jackson Ranch." There is no conflict, however, in the identity of the property when described by either name. The object and purpose of a description of real property is to mark out and designate the boundaries of a portion of the earth's surface, and if this can be done as well by one name as another, that object has been fully accomplished. The rule for determining the sufficiency of a description in a deed, or any other writing in relation to real property, is as follows: Can a surveyor, with the deed or other instrument before him, locate the land and establish the boundaries? *Willamette Co.* v. *Gordon,* 6 Or. 175; *Pennington* v. *Flock,* 93 Ind. 378. In *Smiley* v. *Fries,* 104 Ill. 416, Schofield, J., says: "This court has ruled that any description by which the property might be identified by a competent surveyor with reasonable certainty, either with or without the aid of extrinsic evidence, is sufficient." When a deed refers to another, or to a map, for a more specific description of the land conveyed, the deed or

XXIV. Or.— 7.

map to which reference is thus made is considered as incorporated in the deed itself: Devlin, Deeds, § 1020. The contract refers to certain deeds from Meier & Frank and Richard Hall to W. R. Jackson, which were recorded in Multnomah and Columbia Counties, Oregon, thus making these deeds a part of the contract for a more specific description. The contract recites that such deeds were recorded in both counties, and, between the parties, is a conclusive presumption that such fact exists and required no proof thereof: Hill's Code, § 775. The evidence of parties who are not surveyors shows that they know the Jackson Ranch on Sauvie's Island and can locate the boundaries thereof. If they can do this without the deeds, is it not safe to presume that a surveyor with these deeds in his possession could do the same? Counsel for respondents has cited many authorities to show that the description contained in the lease is not sufficient to identify the property. In nearly every case thus cited the description was clearly defective, and it was impossible from an inspection of the memorandum to locate the premises. He attaches much importance to the case of *Whiteaker* v. *Vanschoiack*, 5 Or. 113, in which Mosher, J., says: "Not only must a contract for the sale of lands be in writing, under the statute, but the lands must be certainly described in the writing, so as to be capable of identification without reference to extrinsic proof." We think this language, limiting the foregoing rule, is too narrow, and that the same learned justice in *Raymond* v. *Coffee*, 5 Or. 132, gave a proper interpretation of the rule when he said: "It is too late to controvert the legal proposition that what constitutes a boundary in a deed is a fact for the jury and may be proved by any kind of evidence which is competent to prove the fact." "In explaining by oral testimony where and how the objects referred to in the written documents were in fact made or existed, those muniments of title are not altered by parol evidence." Such has been the rule of

this court since that time: *Boehringer* v. *Creigton*, 10 Or. 42. We think the description sufficient to identify the property. There is no conflict between the parties as to the particular land intended, and each understood it to be just what it purports to have been.

5. The option having been given to Haley, could he transfer his right so that his assignee could enforce the same? The ground upon which a court enforces an executory contract for the sale of lands is that equity considers things agreed to be done as actually performed; and when an agreement has been made for the sale of lands, the vendor is deemed the trustee of the purchaser of the estate sold, and the purchaser as trustee of the purchase money for the vendor. The vendee, in equity, is actually seized of the estate, and, as a consequence, may sell the same before a conveyance has been executed, notwithstanding an election to complete the purchase restsentirely with the purchaser: *Kerr* v. *Day*, 14 Pa. St. 112 (53 Am. Dec. 526). Haley had an estate in the premises, and was equitably the owner thereof, and could transfer this right, and his assignee can enforce the option to the same extent as his assignor. The evidence shows that at the time the contract was executed the property was worth no more than the amount named in the option, and several witnesses fix the value at that time at a much less sum. Because the value of the property has increased, is that any reason why a court of equity should refuse to decree specific performance of a contract which was fair and equitable at the time it was executed? It is said that such decrees rest in the discretion of the court. This does not mean the exercise of an arbitrary will governed by mere pleasure of the court, but is controlled by fixed rules and principles, in view of the special features and incidents of each case. Courts cannot make contracts for parties, but should enforce them in the furtherance of justice, when fair and equitable.

The decree of the court below will be REVERSED, and a decree here entered for the specific performance of the contract.