Argued November 1, affirmed December 27, 1916.

# SKINNER *v.* FURNAS.

(161 Pac. 962.)

**Specific Performance—Oral Contract—Possession.**

1. It is possession of real property, and, when any relation of affinity or consanguinity exists between parties, also the improvements made upon the land by the purchaser pursuant to the vendor's oral agreement to sell and convey, that takes the case out of the statute of frauds and authorizes a court of equity to decree a specific performance.

**Specific Performance—Complaint—Possession and Improvements.**

2. Since an oral agreement and its part performance are the essentials to be established by evidence at the trial of a suit for specific performance, it is necessary that the complaint therein set forth the oral agreement and allege that possession was taken by the purchaser pursuant thereto, and that, if the parties are related, the latter has made improvements on the land.

**Pleading—Insufficiency of Complaint—Cure by Reply.**

3. Where the complaint, in a suit for the specific performance of an oral agreement to sell and convey land, did not allege that plaintiff took possession pursuant to any oral contract or otherwise, but the answer averred the entry and possession by complainant's husband without any contract and without the knowledge and consent of defendant mortgagors, and where the demurrer to the complaint was overruled, plaintiff, under a reply traversing the averments of new matter in the answer, might offer evidence to substantiate the issue as to the making of the oral contract for the purchase of the land and possession and improvements pursuant thereto.

**Specific Performance—Purchase by Wife—Sufficiency of Evidence.**

4. In a suit by a married woman for specific performance of an oral contract to sell and convey land, evidence *held* to establish the allegation of the complaint that she was the purchaser under the contract.

**Vendor and Purchaser—Possession—Selection.**

5. Where a purchaser takes possession of land by an indicated boundary, his right to the premises vests upon the selection.

**Specific Performance—Oral Agreement—Mutuality.**

6. Mutuality must exist when the aid of the court is invoked to enforce the rights of the parties to an oral contract for the sale of land, and where a recovery of the consideration and the execution of a deed could have been granted to either party when suit was begun, the oral contract was not wanting for mutuality.

[As to necessity of mutuality of remedy to specific performance and what it is, see note in 27 Am. St. Rep. 173.]

**Specific Performance—Oral Agreement—Estoppel.**

7. A married woman should not be denied specific performance of an oral contract to sell land because she permitted her husband to hold the legal title in trust for her, where defendants did not rely upon the husband's apparent legal title.

**Dower—Mortgage—Effect—Statute.**

8. Under Section 7289, L. O. L., relating to dower in land mortgaged for purchase money, the fact that a married woman made no contract, barring her inchoate right of dower, when plaintiff took possession and made improvements under an oral contract with her husband, was of no consequence, where she afterward joined her husband in executing to defendants a purchase-money mortgage, as the foreclosure of that lien and a sale of the premises under the decree concluded all the estate she had in the realty.

**Mortgages—Foreclosure—Purchase by Mortgagee—Title.**

9. A mortgagee, purchasing at a sheriff's sale with knowledge of plaintiff's prior equity in land as purchaser in possession under an oral agreement with the mortgagor, acquired no greater estate than the mortgagor held.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.    Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Mrs. Georgie A. Skinner against Leroy Furnas and Grace M., his wife, J. H. Reid and Genevieve, his wife, and the Umatilla Project Orchard Lands Company, a corporation, to enforce the specific performance of an oral agreement to convey real property.    Mr. Furnas, being the owner in fee of the southwest quarter of the northwest quarter of section 11, in township 4 north, range 28 east of the Willamette Meridian, near Hermiston, Oregon, on October 1, 1910, with his wife conveyed such tract of land and other real property, containing in all 320 acres, to Mr. Reid, who was to discharge a mortgage of $2,500 on the premises.    The latter paid a substantial part of the consideration, and evidenced the remainder by three promissory notes of $10,000 each, respectively maturing on the first day of October each year thereafter, with interest at 7 per cent from date, and to secure the payment thereof he and his wife at the same time exe-

cuted to Mr. and Mrs. Furnas a mortgage of the entire property. About November 1, 1910, at the solicitation of W. H. Skinner, the plaintiff's husband, Reid, in consideration of $450, to be paid when a deed was executed, agreed to sell and convey a strip of land out of the southeast corner of the 40-acre tract, particularly described, possession of which small piece was taken, a house built thereon, and other improvements were made thereto, costing about $4,500. Reid and his wife thereafter executed to the Umatilla Project Orchard Lands Company, a corporation, a quitclaim deed of all their interest in and to the northwest quarter of section 11, in the township and range mentioned. Default was made in the payment of the promissory notes, whereupon the mortgage securing them was foreclosed, in which suit, with others, Mr. Skinner, but not his wife, was made a party defendant. At a sale under the decree Furnas and his wife, on February 14, 1914, became the purchasers for the amount of the debt, costs, etc. They, on March 27, 1915, commenced an action against Mr. Skinner alone, to recover the possession of the small tract on which the house was built. He filed an answer in that action, denying the averments of the complaint, and for a separate defense alleging that he was not then, nor had he ever been, in possession of the demanded premises, nor did he claim any title or interest therein or right thereto. The reply put in issue the allegations of new matter in the answer, and the cause, being tried, resulted in a verdict and judgment in favor of Mr. Skinner, which determination has become final. Thereafter Furnas and his wife commenced against Skinner another action, in which his wife was joined, to recover possession of the small tract. An answer having been filed in that action, Mrs. Skinner, as

plaintiff, commenced this suit in the nature of a cross-bill in equity, setting forth the facts hereinbefore stated, and averring that about November 1, 1910, she "purchased from said J. H. Reid" a tract of land, beginning at a point where the north line of Ridgeway street in the town of Hermiston intersects the east boundary of the southwest quarter of the northwest quarter of section 11, township 4 north, range 28 east, and running thence north 200 feet, thence west 180 feet, thence south 200 feet, to the north line of Ridgeway Street and thence east 180 feet to the place of beginning. "That thereupon the plaintiff entered into the immediate possession of the said piece or parcel of land, and has ever since remained in the quiet, peaceable and undisturbed possession thereof." The complaint details the improvements so made upon the premises, and avers:

"That thereafter plaintiff learned defendant Reid could not make plaintiff a good and sufficient deed of conveyance, and this plaintiff caused the said Grace M. Furnas and the said Leroy W. Furnas to be notified of the purchase of the said tract of land from the said J. H. Reid, and that the purchase price had not been paid."

That the Umatilla Project Orchard Lands Company secured its deed with knowledge of the plaintiff's possession of a small part of its land and of her rights thereto, and that Furnas and wife, upon the sale of the entire lands under the decree of foreclosure, took the naked legal title of the disputed tract with knowledge that the plaintiff was in the possession thereof and had placed valuable and permanent improvements thereon. With the filing of the complaint herein the plaintiff deposited with the clerk of the trial court $450 and interest at 7 per cent per annum from No-

vember 1, 1910, amounting to $615, for the benefit of the persons who might be entitled thereto.

The defendants Reid and his wife and the Umatilla. Project Orchard Lands Company, having been duly served with process in this suit, each failed to appear or answer. The defendants Furnas and his wife demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of suit. The demurrer was overruled, whereupon they, alone answering, denied the material averments of the complaint, and for a further defense alleged that about January 1, 1911, Mr. Skinner sought to enter into an agreement with Mr. Reid to purchase a small tract of land; that they could not concur in the boundaries nor as to the purchase price, and thereupon Skinner began the erection of the dwelling and the making of the improvements "without any contract or agreement with the said J. H. Reid * * and without the knowledge or consent of these defendants or either of them. * * That the said plaintiff never at any time had the sole possession or sole occupancy of the said premises, or any part thereof, and never expended any moneys or placed any improvements upon said tract of land, nor performed anything with respect thereto,. except to reside in said house as the wife of the said W. H. Skinner."

The reply put in issue the averments of new matter in the answer, and further alleged that Furnas and his. wife ought to be estopped to aver or prove that Mr. Skinner claimed to be the owner of the demanded premises, for that the judgment rendered in his favor in the first ejectment action had conclusively determined the matter to the contrary. The cause was. thereupon tried, resulting in a decree as prayed for in the complaint, awarding the money so deposited to

Furnas and his wife, and requiring them, within 30 days, to execute to Mrs. Skinner a good and sufficient deed of the premises, and that in default thereof the decree stand as and for a conveyance of the tract of land in dispute. From this decree Mr. and Mrs. Furnas appeal.                                AFFIRMED.

For appellants there was a brief over the name of *Messrs. Raley & Raley,* with an oral argument by *Mr. James H. Raley.*

For respondent there was a brief with oral arguments by *Mr. James A. Fee* and *Mr. Alger Fee.*

Opinion by MR. CHIEF JUSTICE MOORE.

Invoking the doctrine announced in *Barrett* v. *Schleich,* 37 Or. 613, 617 (62 Pac. 792), where it is said:

"The parol agreement to convey real property is the foundation, and the part performance thereof by the purchaser is the superstructure, which, considered as a unity, authorizes a court of equity specifically to enforce the contract"

—it is maintained by appellants' counsel that, the complaint having failed to aver that a parol agreement to purchase the tract of land was ever consummated, or that pursuant to the terms of any contract possession of the premises was taken and improvements were made, the initiatory pleading does not state facts sufficient to constitute a cause of suit, and, this being so, an error was committed in overruling the demurrer interposed on that ground, which mistake was not cured by answering over. It is argued by plaintiff's counsel that the use of the word "purchase" in the primary pleading implies the consummation of an agreement by the vendor to sell, and the purchaser

to buy, property, and that having alleged a purchase of the land, and "that thereupon the plaintiff entered into the immediate possession" thereof, reasonably shows that possession was taken pursuant to the terms of the contract, and, such being the case, the complaint is sufficient in these particulars. In support of the legal principle thus asserted reliance is placed upon the case of *Cantwell* v. *Barker*, 62 Or. 12 (124 Pac. 264), where in a statement of the facts involved it is said:

"On July 14, 1911, plaintiff commenced this suit against Barker and wife to compel specific performance of a contract of sale of certain town lots, alleging that in October, 1907, defendants, by a verbal contract, sold to plaintiff lots 5 and 6, in block 30, of Condon and Cornish's Addition to Condon, Oregon, for the agreed price of $800; that, immediately upon the purchase, plaintiff entered into possession of the lots and expended $230 in erecting an additional building thereon; and that he has remained in exclusive possession as the owner thereof," etc.

An examination of the printed abstract in that case shows that paragraph 2 of the complaint reads:

"That on or about the month of October, 1907, the defendants W. L. Barker and Annie L. Barker, by a verbal contract of the last-named date, sold and delivered possession of the above-described premises [referring to the preceding paragraph of the complaint] to the plaintiff herein, under said contract, and he, the plaintiff, has continued in possession of said premises from that time until the present, and has made valuable improvements thereon, and has ever since held possession as the exclusive owner of said property": 277 Or. Briefs, 118.

It will thus be seen the complaint in the cause mentioned substantially alleges that possession of the lots was delivered by the defendants to the plaintiff pur-

suant to the terms of the oral agreement. An examination of the statement of facts in the case relied upon will show that the excerpt hereinbefore set forth is not indicated in that opinion by quotation marks.

1. It is possession of real property, and, when any relation of affinity or consanguinity exists between the parties, also the improvements made upon the land by the purchaser, pursuant to the terms of an oral agreement with the vendor to sell and convey the premises, that takes the case out of the statute of frauds and authorizes a court of equity, in a suit instituted for that purpose, to decree a specific performance of the contract.

2. Since the agreement and its part performance are the essential prerequisites to be established by evidence at the trial, it is necessary to the maintenance of a suit of this kind that the complaint should set forth the oral contract, and also allege that pursuant to its terms possession of the premises was taken by the purchaser, and, if the parties are related, that the latter has made improvements upon the land: *Barrett v. Schleich,* 37 Or. 613 (62 Pac. 792); *Zeuske v. Zeuske,* 62 Or. 46 (124 Pac. 203); *Thayer v. Thayer,* 69 Or. 138 (138 Pac. 478). A tenant in possession of real property under a written lease, which grants him a privilege to purchase the premises, may, when the option is accepted within the time and upon the terms specified, maintain a suit for specific performance of the contract without change of possession: *House v. Jackson,* 24 Or. 89 (32 Pac. 1027); *Merrill v. Hexter,* 52 Or. 138 (94 Pac. 972, 96 Pac. 865). In these instances it was the writing that took the cases out of the statute of frauds.

In *Aitkin's Heirs v. Young,* 12 Pa. 15, 24, in speaking of the acts of part performance which will take

an oral agreement relating to land out of the statute of frauds, Mr. Justice ROGERS remarks:

"That in order to constitute a good title by parol the possession must be contemporaneous with, or immediately consequent on, the contract, and in pursuance of it, and that these facts must be established by clear, precise, and satisfactory evidence."

The importance of taking possession of real property, pursuant to the terms of an oral agreement to sell and convey land, is illustrated by the decision in *Roberts* v. *Templeton*, 48 Or. 65 (80 Pac. 481). See, also, the very extended notes to this case in 3 L. R. A. (N. S.) 790.

3. In the case at bar the complaint does not allege that the plaintiff took possession of the demanded premises pursuant to the terms of any agreement oral or otherwise.

It will be kept in mind, however, that the answer substantially avers the entry upon and possession of the land by W. H. Skinner were taken and held without any contract or agreement with Mr. Reid or anyone for the purchase of the land, and without the knowledge or consent of either Mr. or Mrs Furnas, which allegation was controverted by the reply. After the demurrer was overruled, the allegations of the answer hereinbefore quoted gave the plaintiff by her reply the opportunity to offer evidence to substantiate the issue as to the making of the oral contract with Reid for the purchase of the tract of land, and that pursuant to the terms of that agreement possession of the premises was taken and improvements thereon were made. If the controversy raised by the reply had been stated as new matter in that pleading and not as a denial of the averments of the answer, there would have been no departure, but a mere enlarge-

ment of the averments of the complaint: *Mayes* v. *Stephens,* 38 Or. 512 (63 Pac. 760, 64 Pac. 319) ; *Crown Cycle Co.* v. *Brown,* 39 Or. 285 (64 Pac. 451); *Kiernan* v. *Kratz,* 42 Or. 474 (69 Pac. 1027, 70 Pac. 506) ; *Zorn* v. *Livesley,* 44 Or. 501 (75 Pac. 1057) ; *Pioneer Hardware Co.* v. *Farrin,* 55 Or. 590 (107 Pac. 456). If, therefore, the averments of the complaint are insufficient in the respects mentioned, the new matter in the answer waived the defects in these particulars.

4. It is maintained that the testimony received was insufficient to establish the allegations of the complaint that Mrs. Skinner was the purchaser of the tract of land under the oral contract to convey, and, this being so, an error was committed in decreeing her the relief sought. Evidence of many circumstances was given by defendants' counsel tending to prove that Mr. Skinner was named as the grantee in several conveyances of real property as to which deeds his wife testified he held the legal title in trust for her, which sworn declarations are corroborated by the testimony of her husband. Thus it appears he owned in his own right an undivided one fourth of a part of the town site of Hermiston, Oregon, and also held the legal title to an equal interest in the same real property in trust for his wife. It also appears that at a school meeting, held in that town, at which assembly there was quite a rivalry betwen different sections of the district respecting local matters, Mrs. Skinner's right to vote was challenged on the ground that she was not a qualified elector, but upon Mr. Skinner's declaration that she was the equitable owner of an interest in the town site she was allowed to vote. Mr. Skinner was also named as the grantee in a conveyance of land which was exchanged for lumber that was used in building the house on the disputed premises, but he testified

that as to such premises he held the legal title in trust for his wife. One circumstance seems to discredit his testimony, and that is the new house was insured in his name. In explaining this matter, however, he states upon oath that the policy was thus issued by mistake of the agent.

The testimony shows that Mrs. Skinner owned a desert land claim near Hermiston, which right she sold, expecting to use the money as it matured under the terms of the agreement in completing the new house and improving the tract of land she had agreed to purchase. She was disappointed in the collection of the money thus due her, and was obliged to resort to expedients in order to meet the payment of her obligations. She with her husband borrowed from the Hermiston Bank & Trust Company $2,750 and $1,455, respectively, pursuant to an agreement that, if demanded, she would give as security a mortgage of her desert land claim.

J. H. Reid, having testified that $450 was agreed upon as the consideration to be paid for the tract of land desired, and that prior to concluding the bargain therefor he walked over the premises with the plaintiff's husband, was asked:

"Didn't Mr. Skinner state to you at the time of that purchase, Mr. Reid, that the land was being purchased as a home for Mrs. Skinner, and the lots must be satisfactory to her, or words to that effect?"

The witness answered: "Yes, sir." Notwithstanding the circumstances adverted to, it is believed Mr. Skinner was acting as the agent of his wife, and not on his own account, when he negotiated with Mr. Reid, the then owner of the entire lands, for the purchase of the small tract; that she then had reason to believe, and did believe, that from the proceeds of the sale of her

desert claim she would receive a sufficient sum of money with which to pay for the land in question and to put up the buildings and make improvements thereon.

5. It is insisted that no agreement was reached respecting the boundaries of the land Reid was to sell and convey, and hence an error was committed in granting the relief decreed. The testimony shows that prior to concluding the mere oral agreement Mr. Reid went to the southeast corner of the small tract desired, and pointed out the particular land involved, one boundary of which might possibly be shortened to coincide with the line of an alley when the larger premises were surveyed and platted into lots and blocks, which has never been done. It also appears that with his knowledge and consent Mrs. Skinner took possession of the parcel of land so indicated, and improved it to the extent of the boundaries thus designated. When, under such circumstances, the purchaser takes possession of land by an indicated boundary, his right to the premises vests upon the selection: 1 Dembitz, Land Titles, 36; *Richards* v. *Snider,* 11 Or. 197 (3 Pac. 177); *Guillaume* v. *K. S. D. Land Co.,* 48 Or. 400 (86 Pac. 883, 88 Pac. 586); *Purinton* v. *Northern Ill. R. Co.,* 46 Ill. 297. No error was committed in this respect.

6. It is maintained that the alleged oral agreement was not mutual, and for that reason an error was committed in decreeing specific performance. In *Brown* v. *Munger,* 42 Minn. 482 (44 N. W. 519), a headnote on this subject reads:

"In order that specific performance of an agreement for the sale, exchange, or conveyance of land be decreed, it is not absolutely essential that there be mutuality of remedy *ab initio.* But the mutual enforcement of the contract should be practicable when

specific performance is adjudged. The court should then be able to enforce by its decree all of the terms, *in praesenti;* should have the power to supervise the performance of the contract by each of the parties, and in all of its parts.''

Another part of a headnote to that case is as follows:

''The legal principle that contracts must be mutual does not mean that each party must be entitled to the same remedy for a breach by the other. There must be mutuality of obligation, but not necessarily mutuality of remedy.''

See, also, *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027); *Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 296); *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666). Mutuality must exist when the aid of a court is invoked to protect and enforce the rights of the parties by its decree; and, as a recovery of the consideration and the execution of a deed could have been granted to either party when this suit was instituted, the oral contract was sufficient in this particular.

7. Neither Mr. nor Mrs. Furnas, relying upon Mr. Skinner's apparent legal title in or to the real property which he asserts he held in trust for his wife, permitted him to become a debtor upon faith in such credit, and, this being so, Mrs. Skinner should not be denied an exercise of her legal right to specific performance of the oral contract to convey the land, because she had such confidence in her husband as to allow him to hold in trust for her the legal title to her property.

8. No contract appears to have been made with Mrs. Reid, whereby her inchoate right of dower to the land involved in this suit was barred when Mrs. Skinner took possession of the premises and made such valuable and permanent improvements thereon. Any failure in this respect, however, is now of no consequence, for, Mrs. Reid having joined her husband in executing

to Mr. and Mrs. Furnas a purchase-money mortgage, the foreclosure of that lien and the sale of the premises under the decree effectually concluded all possible estate Mrs. Reid had in the real property: Section 7289, L. O. L.; 14 Cyc. 952; *Mansfield* v. *Hodgdon,* 147 Mass. 304 (17 N. E. 544).

9. Mr. and Mrs. Furnas, the purchasers at the sheriff's sale, though they may have been restored to their original estates as to all the land, except the small tract, took, as to the latter strip, only the naked legal title: *May* v. *Emerson,* 52 Or. 262 (96 Pac. 454, 16 Ann. Cas. 1129); *Cantwell* v. *Barker,* 62 Or. 12 (124 Pac. 264). They took with knowledge of the plaintiff's equity, and hence acquired no greater estate than Reid held: *Dimmick* v. *Rosenfeld,* 34 Or. 101 (55 Pac. 100); *Jennings* v. *Lentz,* 50 Or. 483 (93 Pac. 327, 29 L. R. A. (N. S.) 584); *Smith* v. *Farmers & Merchants' Nat. Bank,* 57 Or. 82 (110 Pac. 410).

The lien created by the mortgage of the entire 320 acres, executed by Mr. and Mrs. Furnas to secure the payment of $2,500, for water rights appurtenant to the premises, was not disturbed by the decree rendered herein, nor could it have been, for that mortgagee was not made a party to this suit. If, however, Mrs. Skinner is compelled to pay any part of that sum, she can be subrogated and enforce the lien against the remainder of the land, after a merger as to her separate tract.

A careful examination of the testimony leads to the conclusion that the decree should be affirmed; and it is so ordered.                     AFFIRMED.