Argued April 9, reversed November 13, 1928, rehearing denied January 8, 1929.

### CHARLES RICHANBACH v. A. C. RUBY.

(271 Pac. 600.)

For appellant there was a brief over the names of *Mr. Thomas G. Greene* and *Messrs. Manning & Harvey,* with an oral argument by *Mr. Greene.*

For respondent there was a brief over the name of *Messrs. Dey, Hampson & Nelson,* with oral arguments by *Mr. Roscoe C. Nelson* and *Mr. Leon W. Behrman.*

McBRIDE, J.—The defendant raises two important questions in this appeal. The first question, briefly stated, is that the contract for leasing the property, which contained an option to purchase the

same, is a contract for the sale of real estate; that under subdivision 8, Section 808, Or. L., such contract must be in writing and, it not being in writing in this case, that therefore the plaintiff cannot recover. It is contended, conceding plaintiff's allegations in the complaint to be true, that the contract is not separate and therefore the plaintiff has no remedy to recover the commission.

The second question is that it is contended that plaintiff never employed Richanbach to procure the lease, but that Richanbach applied to the plaintiff on behalf of Morris Taylor, the alleged intended lessee and optionee; that, if he is entitled to compensation from anybody, it is from Taylor the man who employed him, and that he was the agent of Taylor and not the defendant. The testimony in the case is very contradictory both as to the negotiations and as to the employment of plaintiff.

■ We will now discuss the main points relied upon by the appellant. Is the alleged contract for the sale of land within the meaning and intent of subdivision 8, Section 808, Or. L.? An option to purchase, whether with or without consideration, conveys no present interest in land, and such a transaction is not a sale of land. If without consideration, it may be withdrawn at any time before acceptance. If supported by a consideration, it becomes an existing contract for the sale of land at and not before acceptance by the optionee: Warville on Vendors (2 ed.), §§ 125, 126; James on Option Contracts, § 607; *Ide* v. *Leiser*, 10 Mont. 5 (24 Pac. 695, 24 Am. St. Rep. 17).

■ It is claimed by the defendant that there is an exception to this rule in the case of leases which permit the right of present possession and the right

to purchase within a given time during the leasing period, and that such an option in a lease of the character indicated conveys such a present interest in the leased premises as will constitute a present interest in the land which amounts to a contract of sale. To sustain this contention appellant cites, among other cases, *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027); *Kerr* v. *Day,* 14 Pa. St. 112 (53 Am. Dec. 526); *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666); *Willard* v. *Tayloe,* 8 Wall. 557 (19 L. Ed. 505); *Frick's Appeal,* 101 Pa. St. 485; *Telford* v. *Frost,* 76 Wis. 172 (44 N. W. 835); *Wall* v. *Minneapolis, St. Paul, Sault Ste. Marie R. Co.,* 86 Wis. 48 (56 N. W. 367); *Crowley* v. *Byrne,* 71 Wash. 444 (129 Pac. 113); 39 Cyc. 1247. We will now consider these cases. In *House* v. *Jackson, supra,* Jackson leased a farm to Haley. Haley went into possession and paid rent for a year and occupied the premises until for a valuable consideration he assigned all his interest in the leased premises to Pomeroy, and thereafter Pomeroy assigned to Reghitto, who assigned to plaintiff, who went into possession. All the assignors occupied the premises and paid the stipulated rent. There was a clause in the lease which read as follows:

"And the said parties of the first part further agree to sell said tract of land and convey the same by a good and valid deed to the said party of the second part at any time before the expiration of this lease for the sum of twenty-five hundred ($2,500) dollars. And the said party of the second part hereby agrees that in case he fails to purchase said tract of land before the expiration of this lease, for the above stipulated consideration, he shall forfeit to the said parties of the first part all rights and claims to any improvement that he shall have made thereon."

Before the term of the lease expired House, the last assignee of the term, tendered the stipulated purchase money and demanded a deed, and on refusal of the lessor to convey brought suit for specific performance. The defendant, among other defenses, contended, first, that the contract was not mutual; and, second, that the option to purchase was not assignable.

The court held, first, that the covenant to pay rent and the payment of it constituted a sufficient consideration, citing *Maughlin* v. *Perry,* 35 Md. 353; second, that the option was assignable and that the assignee could maintain thereon a suit for specific performance, using the following language:

"The option having been given to Haley, could he transfer his right so that his assignee could enforce the same. The ground upon which a court enforces an executory contract for the sale of lands is that equity considers things agreed to be done as actually performed; and when an agreement has been made for the sale of lands, the vendor is deemed the trustee of the purchaser of the estate sold, and the purchaser as trustee of the purchase money for the vendor. The vendee, in equity, is actually seized of the estate, and, as a consequence, may sell the same before a conveyance has been executed, notwithstanding an election to complete the purchase rests entirely with the purchaser: *Kerr* v. *Day,* 14 Pa. St. 112 (53 Am. Dec. 526). Haley had an estate in the premises, and was equitably the owner thereof, and could transfer this right, and his assignee can enforce the option to the same extent as his assignor."

In our opinion, the remark above quoted, while fairly germane to the question discussed, gave an inappropriate reason for a just decision for these reasons: First, there was nothing in the lease which

prohibited its assignment including all rights under it. Second, that rights under options based upon a consideration are assignable is firmly established by the great weight of authority: James on Option Contracts, § 607, and cases there cited.

The invocation of legal fiction invoked in *Kerr* v. *Day, supra,* and in the case of *House* v. *Jackson, supra,* was wholly unnecessary to sustain the decision on those cases. Where a lessor solemnly agrees in writing and for a consideration that on the performance of a certain act by a lessee, he will convey land to him, he is equitably bound to convey by virtue of his agreement, not that equity presumes "that to have been done which ought to have been done," but rather that equity "will compel him to do what he ought to have done." It does not necessarily assume that the optionee has a present estate in the land, but rather that upon his seasonable acceptance of the option he has converted it into an executory contract which equity will enforce. In effect, the case of *Kerr* v. *Day, supra,* announces the same doctrine, although the court seems to have lost itself in a maze of authorities not one of which sustains the excerpt cited by Justice Moore. The writer has examined all the available English authorities cited in *Kerr* v. *Day* and none of them go further than to hold that an optionee or his successor by compliance with the terms of his option creates such an estate in the land as will justify a decree of specific performance. In *Elder* v. *Robinson,* 19 Pa. St. 364, the court remarked that the principle relied on by plaintiff in that case "was strained to the utmost in *Kerr* v. *Day,*" which to say the most seems an exceedingly mild approval of that rather unique decision. It may be here remarked that it has not

been the usual practice in Oregon to record options for the purchase of real estate, although Sections 9844 and 9854, Or. L., provide the method in which conveyances of land or any interest in lands shall be executed, and Section 9871, Or. L., provides for their recordation. The custom alluded to is only valuable as indicating a general acquiescence on the part of skillful conveyancers in the idea that such options are not "interests in lands."

Another case is *Willard* v. *Tayloe,* 8 Wall. 557 (19 L. Ed. 501), but this case only holds, as the headnote indicates, that—

"A covenant in a lease, giving the right to purchase the premises, is a continuing offer to sell, which, when accepted, constitutes a contract of sale."

Justice FIELD expressly states that *"when accepted* by the complainant by his notice to the defendant a contract of sale between the parties was completed," thus intimating that until such acceptance, no contract of sale existed, which is precisely the position of counsel for plaintiff in the case at bar.

*Crowley* v. *Byrne,* 71 Wash. 444 (129 Pac. 113), is cited by appellant, but the opinion goes no further than to cite the authorities on both sides of the question now under discussion without indicating which view is adopted by the court, and saying, "at any rate the option vests in the grantee the right or privilege of acquiring an interest in the land and, when accepted, entitled him to call for specific performance." The court further held that such right, when exercised, must necessarily relate back to the time of giving the option so as to cut off the rights of subsequent purchasers with notice of the option. This decision seems to be in harmony with the weight of authorities, but is far from asserting that when

a man sells to another an option to purchase property, he thereby sells him land, or an interest in land. The case of *Telford* v. *Frost,* 76 Wis. 172 (44 N. W. 835), seems more in point than any other case cited by appellant. At page 174 it is there said:

"The learned counsel for the defendant is undoubtedly right in claiming that the optional written contract held by the plaintiff against Colwell gave to the plaintiff an interest in the land therein described, within the meaning of sec. 2302 R. S. This being so, he strenuously contends that the plaintiff could not surrender the same except by deed or conveyance in writing subscribed by him, and that, as such surrender was a part of the consideration of the promise sued upon, he improperly recovered. The power to surrender such interest, however, is not thus limited by that section."

The question at issue in that case was whether, conceding, as defendant did, that an option to purchase conveyed an interest in lands, such option or right could be transferred except by *deed.* The court held that it could. It must be remembered that the court was dealing with the case of an accepted option and it was not necessary to consider, and it probably did not consider, what would have been the status of an option not yet accepted. The plaintiff was employed in that case to procure a person to take up the option and purchase the optioned property and his fee was earned when he did this. The purchaser in effect said this: You have an option to A's property for $3,000. Now you step out and get A to sell it to me for $3,000 and I will give you $1,000, which Telford, the optioner, did. When he demanded his $1,000, Frost said: "You had no right to transfer your option rights to me except by deed; you gave no deed therefore I refuse to pay you."

This is a fair dissection of the case and the meat of the contention.

The remark of the court that the option created an interest in land must be taken to be with reference to the conditions existing in the particular case, namely, an option accepted and a deed made in pursuance of it if, indeed, the statement had any relevancy whatever.

The statement in 27 C. J. 217, to the effect that an option to purchase is a contract for the sale of real property, seems to be based upon the case of *Granger Real Estate Exch.* v. *Anderson* (Tex. Civ. App.), 145 S. W. 262. In that case the defendant had listed with plaintiffs, real estate brokers, a tract of land for sale at $125 an acre upon such terms as to cash and credit payments as might be agreed upon between the defendant and the purchaser with interest on the deferred payments at the rate of 8 per cent per annum. There was no exclusive agency given to the plaintiffs. On the contrary, they were informed that the land was listed with other agents and that defendant also reserved to himself the right to sell. Plaintiffs induced one Bartosh to examine the land with a view of purchasing and arranged a meeting between Bartosh and wife at defendant's office. Bartosh expressed to defendant a willingness to accept all his terms as to payments except the 8 per cent interest, finally offering to pay 7 per cent, which was refused, and claimed that the defendant had promised to give him until the following Monday to make up his mind whether he would accede to defendant's terms as to interest. During the same day, Saturday, defendant sold the land to another party and notified plaintiffs. Bartosh would have purchased the land at defendant's terms had not

defendant sold on Saturday. The facts as to the alleged promise were denied by defendant but the appellate court, for the purposes of its decision, assumed them to be true. Upon the trial, plaintiffs, who sued for a commission, requested the court to instruct the jury in effect that, if they found that the defendant had made the agreement with Bartosh, their verdict should be for the plaintiffs. The trial court refused the instruction and on that account the plaintiffs appealed. The appellate court sustained the ruling of the trial court, saying:

"We hold that said requested charge did not correctly embody the law applicable to this case for two reasons: (1) Such an agreement, if made, was a 'contract for the sale of real estate,' and, not being in writing, was void under the statute of frauds. R. S. 1895, art. 2543, § 4. Said agreement, if made, could amount to no more than an option to remain in force until the following Monday. 'An option is simply a contract by which the owner of property agrees with another person that he shall have a right to buy the property at a fixed price within a certain time.' *Ide* v. *Leiser,* 10 Mont. 5 (24 Pac. 695, 24 Am. St. Rep. 17). An option is not excepted from the general rule that contracts must be supported by a consideration, and a promise to give a party a certain time within which to buy land, if not supported by a valuable consideration, is *nudum pactum,* and will not prevent the owner from withdrawing the option whenever he sees fit. *Coleman* v. *Applegarth,* 68 Md. 21 (11 Atl. 284, 6 Am. St. Rep. 417); *Williams* v. *Graves,* 7 Tex. Civ. App. 366 (26 S. W. 334); *Litz* v. *Goosling,* 93 Ky. 185 (19 S. W. 527, 21 L. R. A. 127). Those who are desirous of pursuing this inquiry further are referred to the note to the case last above cited, and also to *Williams* v. *Graves, supra,* and the authorities referred to in said case.

"The alleged agreement upon the part of the appellee to give Bartosh until the following Monday

to decide whether or not he would take the land upon the terms offered being void, as against the statute of frauds, not supported by consideration, unilateral, and therefore subject to withdrawal, and the same having been withdrawn by the sale of the land by appellee before the terms proposed by appellee were accepted by Bartosh, it could form no basis for appellants' recovery herein. Said agreement being without consideration, was not binding as between appellants and appellee, even in morals, as appellants understood, when they accepted the agency of said land, that appellee was anxious to sell the same and would do so to the first purchaser who complied with the terms upon which he was offering the same, and that they could not expect that appellee would refuse to close a deal with a purchaser who was ready and willing to take the land, upon the contingency that another purchaser might take it upon the same terms at a subsequent date; and appellants must have realized that said promise, if made, was made upon the theory that no one else would offer to purchase the land at the price and upon the terms asked before the following Monday.''

The meaning of the court is somewhat obscure, but may well be taken as a holding that an option for the purchase of real estate is a ''contract for the sale of lands.'' If so, its holding is opposed by the great weight of authority, and, as the court cites not a single authority for its statement, it may be fairly said that this phase of the controversy was not maturely considered. The court did not hold that in any event it would be such a contract as would convey any present interest in the land, and, as shown in the opinion, it was without consideration, a mere option, a *nudum pactum* in any event. The statement was wholly unnecessary. We will not consider this subject further than to say that the claim that an option creates an interest in the land has not suc-

ceeded in convincing a single text-writer of its cogency, and that Warville, Pomeroy and James take the opposite view. We can only add that the cases of *Strong* v. *Moore,* 105 Or. 12 (207 Pac. 179, 23 A. L. R. 1217), and *Strong* v. *Moore,* 118 Or. 649, 654, 655 (245 Pac. 505), are conclusive against the contention of appellant here. These were cases involving an option upon a consideration expressed in writing, and in the first of these this court, speaking by Mr. Justice HARRIS, said:

"An option does not pass to the optionee any interest in the land; but a contract of sale does transfer to the vendee an interest in the land; and therefore a person appearing in the character of an optionee possesses nothing except the right to elect to buy, and he has no interest in the land until by his acceptance of the option he transforms the option into a contract of sale and changes his character from that of an optionee to that of a vendee: *Kingsley* v. *Kressley,* 60 Or. 167, 172 (111 Pac. 385, 18 Pac. 678, Ann. Cas. 1913E, 746); *Gamble* v. *Garlock,* 116 Minn. 59 (133 N. W. 175, Ann. Cas. 1913A, 1924)."

In the same case involving the same option, Mr. Justice BURNETT says:

"There are two fallacious contentions advanced by the plaintiffs as the basis of their grievance. The first is that they had a contract of sale of the property involved, whereas in fact, according to the documents which they propound and attach as exhibits to their complaint, they only had options to buy the property. In neither of the documents quoted do they agree to buy the property. Having paid a valuable consideration for the option, they could have enforced it and procured title only by paying according to its terms, but they did not. These same documents were construed by this court as options in *Strong* v. *Moore,* 105 Or. 12 (207 Pac. 179, 23

A. L. R. 1217), in an option by Mr. Justice HARRIS. Nowhere, in either of the instruments, do the plaintiffs or their representative agree to buy. At any time they could have abandoned their option and none of the defendants could have compelled them to pay for or take title to the realty involved. Hence the plaintiffs never had any interest in the property at any time."

A citation of these two cases might have concluded the discussion on this branch of the case, but if the *dictum* in *House* v. *Jackson, supra,* standing alone, has misled the eminent counsel for appellant, as it seems to have done, it might mislead others, and therefore the writer thinks it necessary to go thoroughly into the subject so that hereafter there may be no misunderstanding among the profession as to the quality and efficacy of option agreements. But this is far from disposing of this case. The defendant denies that he employed plaintiff to negotiate the lease and option set forth in plaintiff's complaint. He claims that instead of applying to plaintiff that plaintiff applied to him to know if he would consider leasing the property, and that upon his indicating that he might do so plaintiff returned with a proposition from Taylor to lease the property for what plaintiff considered an inadequate consideration, which plaintiff rejected and the transaction fell through, and that thereafter plaintiff again approached defendant with a proposition from Morris Taylor to lease the property, which proposition was in writing, and was as follows:

"February 24, 1925.

"Charles Richanbach Company,
    "Portland, Oregon.

"Gentlemen:

"You are hereby authorized to negotiate a lease for me covering all of lot 6 and the north 30 feet of

lot 7, block 31, Couch Addition to the city of Portland, Multnomah County, Oregon, being 80 feet by 100 feet in size, and the southeast corner of 5th & Burnside Sts., and all of the building situated thereon, for a period of thirty years, beginning March 1st, 1925, for the advanced monthly rental of $1,000.00 per month for the first ten year period, $1,100.00 per month for the next 10 year period and $1,200.00 per month for the last ten year period, net to owner.

"I will pay all taxes, insurance and one-half of all assessments levied after date of lease. I will take over the leases now on certain parts of said premises, which I understand are as follows, and are represented to me as such:

"Hotel situated at 286-½ Burnside St.—lease for about 2 years, $450.00 per month, hotel containing 67 rooms.

"Restaurant situated at 286 Burnside Sts.—lease for 1 year, $110.00 per month.

"Barber shop situated at 288-½ Burnside St. no lease, paying $65.00 per month.

"Tailor shop situated at 290-½—292 Burnside St.—no lease—paying $110.00 per month.

"Theatre situated at 290 Burnside St.—lease for 6 years—$450 per month.

"Fruit stand on the corner—no lease—paying $150.00 per month.

"Furthermore, I will deposit with the owners the sum of $10,000 in cash for security for the payment of the rental in performance of the covenants and conditions of the lease, for which I shall be entitled to receive interest at the rate of 6% per annum, payable quarterly, provision to be made to return the said $10,000, upon the termination of the said lease, and a further provision of forfeiture of said $10,000, as liquidated damages, should the terms of said lease be broken, etc.

"I herewith hand you my check for $1,000.00 as evidence of good faith in carrying out this offer and the same shall be returned to me immediately upon the time limit of this offer, as herein mentioned.

Time being the essence hereof, and if this offer is not accepted by noon Thursday, February 26, 1925, same shall be and is hereby withdrawn.

"Lease to contain the usual provisions for the protection of lessor and lessees as is now the custom at Portland, Oregon. Lease also to contain an option for the purchase of the said property by lessee during the life thereof for the sum of $200,000, $50,000, in cash and balance to be paid in terms to be agreed upon.

"Very truly yours,
"MORRIS TAYLOR."

To which proposition defendant replied in a letter addressed to Richanbach as follows:

"February 26, 1925.
"Charles Richanbach Company,
"Portland, Oregon.
"Gentlemen:

"I acknowledge receipt of your letter of February 24th, 1925, making us an offer from Morris Taylor to lease the property covering Lot 6, and north 30 feet of Lot 7, block 31, Couch Addition to the city of Portland, Multnomah County, Oregon, being 80 feet by 100 feet, on the southeast corner of 5th and Burnside Streets.

"I will accept Morris Taylor's offer and the conditions as contained in your letter of the above date, with the exception of last paragraph of your letter as to the option, which you have asked to purchase the above property, and wish to give you the following option during the first ten years of the 30-year lease. As asked in your letter, I will give you an option to purchase the above property for consideration of two hundred thousand ($200,000.00) dollars, as purchase price and will accept the fifty thousand ($50,000.00) dollars down in cash as first payment, if the option is taken up during the above time.

"During the term of the first ten years of the lease, if I have a bonified offer to sell the above property, I am to give Mr. Morris Taylor, written notice for

90 days, and if the said Morris Taylor does not take up his option within 90 days, then, and in that event, the above option will immediately become cancelled and null and void.

"Very truly yours,
"A. C. Ruby."

To sustain his contentions, the plaintiff offered these letters in evidence and they were received. Beyond these, there was little evidence introduced in the case tending to show plaintiff's employment by defendant except his own statement, that defendant agreed to pay him a commission, and his account in detail of the conversation with defendant, which conversation was strenuously denied by defendant.

■ ■ The defendant's counsel requested the court to give the following instruction, which was refused:

"There has been introduced in evidence a letter written by the defendant to the plaintiff mentioning prices and terms relating to the transaction alleged in the complaint. I instruct you that this letter does not show that the defendant employed plaintiff as his agent and did not make the plaintiff the defendant's agent or broker to negotiate the transaction alleged in the complaint."

It is the duty of the court to construe documents introduced in evidence and this exhibit did not show or tend to show that Richanbach was employed by Ruby to negotiate the lease. In fact, taken in connection with exhibit "A," its tendency was exactly the reverse, and the instruction should have been given. The fact that the letter was addressed to Richanbach instead of Taylor might have led an inexperienced jury to infer that by writing it defendant was in some way engaging the services of Richanbach; but in view of the admitted fact that the letter was in reply to Taylor's letter authorizing

Richanbach to make the proposition to Ruby, it ought not to be so considered.

The case was close and the testimony conflicting, and the court should have cleared up all doubt as to the legal effect of this letter. For this reason the case should be reversed and a new trial directed.

REVERSED. REHEARING DENIED.

RAND, C. J., and BELT and COSHOW, JJ., concur.