Argued at Pendleton, May 9, affirmed July 2, objections to cost bill allowed and costs taxed July 23, rehearing denied July 23, 1929.

## PETER HOLMBERG *v.* PRUDENTIAL SAVINGS & LOAN ASSOCIATION.

## FRED HOLMBERG *v.* PRUDENTIAL SAVINGS & LOAN ASSOCIATION.

(278 Pac. 943.)

For appellant there was a brief and oral argument by *Mr. J. H. Kelley.*

For respondents there was a brief and oral argument by *Mr. H. V. Schmalz.*

ROSSMAN, J.—We shall first consider appellant's assignment of error predicated upon the denial of its motion for a directed verdict. The two Holmbergs were employed as common laborers in the construction of a railroad tunnel in Harney County. One R. W. Ellithorpe, a representative of the appellant, visited the construction camp where the two men

lodged, and interested them in the defendant. Since Elliothorpe did not testify, the account of what occurred upon that occasion was narrated from the witness-stand, only by the plaintiffs. Their story was to the following effect: when the agent discovered that the plaintiffs had savings accounts with a bank he inquired of them why they remained content with only four per cent interest when his company paid seven per cent, and followed this with a declaration that a bank "could go broke," while his company was secure forever. The plaintiff, Peter Holmberg, having in mind a possible need for his money about a year hence, asked whether he could then withdraw it, and was met with a reply, "after one year you can draw it out"; in the meantime the amount deposited with the defendant was to receive seven per cent interest. The men testified that they thereupon gave the agent their money, and at his request signed some cards so that the company would have a copy of their signatures for identification purposes should they make withdrawals. The plaintiffs explained that they had become familiar with such requirements when they opened bank accounts, and maintained that those were the only documents which they signed. Both testified that they could not read the print upon the paper, and that they accepted Ellithorpe's explanation of the nature of these instruments which he requested them to sign. Fred Holmberg had come to America in 1923, while his brother Peter, forty years old, had arrived apparently some years sooner. This transaction occurred in 1925; Fred Holmberg testified that at that time he could not read and write English "very well"; while Peter explained that he could neither read nor write. The latter added that they did not ask anyone else to explain these papers

to them for the following reason: "Well, we were all Swedes, maybe some of them could, but none of them had any schooling in this country * * I just listened to the agent, that was all, * * there was only me and Fred in the tent. We bunked together and we was two of us there, and I don't remember if Fred was there or not, but he couldn't read, he was too late in the country at that time, you know." As we have previously stated, both men unswervingly testified that Ellithorpe represented that their signatures were wanted for the purposes of identification only. Both firmly denied that he made any mention of shares of stock, or similar matters referred to in the answer. The papers they signed are only a little larger than a postal card. The first of the printed matter upon the paper is an application for membership in the defendant, and the latter portion is a proxy. Both divisions were signed, and each defendant signed such a card. As a matter of fact, one could reasonably make the mistake of assuming, from the appearance of the card, that it was intended to serve the purposes of signature identification, but a reading of the printed matter upon it could not mislead anyone.

Fred Holmberg testified that he was unable to identify his signatures to the combination application and proxy form, which the defendant contended he had signed; the other plaintiff readily identified his signatures; but, as we have previously indicated both contended that they were not bound by the legal effect of the document, because of the alleged fraud in its inception. The defendant offered no testimony in conflict with the foregoing.

It seems to us that the foregoing evidence made it impossible for the court to direct a verdict in

defendant's favor. In the recent case of *Union Central Life Ins. Co.* v. *Kerron* (Or.), 264 Pac. 453, this court held:

"The law of this case is well settled. When an injured party has capacity to read a written contract signed by him, and has an opportunity to do so, if no fraud is practiced upon him to prevent him from reading such writing, and he chooses to rely upon what another says it contains, without requesting that it be read, he is estopped by his own negligence from claiming that he is not bound by its terms. *Lovell* v. *Potts,* 112 Or. 538 (207 Pac. 1006, 226 Pac. 1111), and cases there cited. On the other hand, if false representations are made and relied on by another, or undue influence is practiced in obtaining a signature to a writing, it is not binding on the person so signing, although he did not read it or request that it be read to him. See note, 32 Am. St. Rep. 384. However, false representations, to constitute fraud, as the term is used herein, must be such representations as will deceive a person of ordinary prudence. *Wheelwright* v. *Vanderbilt,* 69 Or. 326 (138 Pac. 857)."

See to similar effect *Interior Warehouse Co.* v. *Dunn,* 80 Or. 528 (157 Pac. 806), and *Bouchet* v. *Oregon Motor Car Co.,* 78 Or. 230 (152 Pac. 888). The authorities in other jurisdictions are to like effect: Page on Contracts, § 229; 13 C. J., Contracts, § 250; 6 R. C. L., Contracts, § 52. In the aforementioned section of Page on Contracts there will be found a review of many cases wherein the contract was held voidable, because of the misrepresentations as to its effect, which induced the signature; we quote the following instance, "A fraudulent representation that the terms of a writing which is tendered as a contract are, in fact, those of the contract entered into between the parties, renders such contract void." From 6 R. C. L., Contracts, Section 51, we quote:

" * * There are early decisions to the effect that as a general rule, which is subject to some exceptions, a party is estopped to allege that he relied on the other's representations as to the contents of an instrument, at least if it confers upon him rights which he is seeking to enforce. There are comparatively recent decisions which to some extent support this view, as, for instance those holding that a person relying on a misrepresentation as to the contents of an instrument must show that it was obtained by misrepresentations of its contents, and that the misrepresentations were false, and that he has exercised due diligence to guard against fraud; and, to excuse a want of due care and diligence in a case of this kind, the defendant should show that there was a known trust and confidence between the parties to the instrument, and that the relationship of the parties was such as to justify the existence of such trust and confidence. A less stringent rule is expressed by the statement that the fact that a false representation is made in respect to the paper is not necessarily sufficient to excuse such person for affixing his signature thereto in ignorance of its contents, unless under all the circumstances, in view of his duty to give reasonable attention to the protection of his own interests, the false representation was still reasonably calculated to and did induce him not to make the investigation which he otherwise would have made. The tendency of modern decisions appears to be toward the establishment of a more liberal rule. While there is always a sharp struggle in the courts between the desire to repress fraud upon the one hand, and on the other to discourage negligence and the opportunity and invitation to commit perjury, the rule seems to be settling down to hearing all the facts, still scrutinizing closely, and even suspiciously, the claim of a party to such an instrument that he had not read it. The fact is, that very thing frequently happens. If the opposite party has induced him by trickery, fraud, or any kind of artifice not to read it, with the view to obtaining from him a paper

which he could not otherwise have obtained the right to prove these circumstances and thereby establish the fact that he believed he was signing an entirely different paper, and so relieve himself from the obligation thereof, is undoubted.''

■ It is clear from the foregoing authorities, including the three citations to our own reports, that the plaintiffs are not precluded from asserting the fraud they rely upon, unless they were guilty of inexcusable negligence. But, their illiteracy, accompanied, in their crude camp, with a lack of any capable adviser we believe frees them from any imputation of negligence. The authorities above cited supply ample citations which support this conclusion. This is not an instance of illiteracy alone, but is one where the plaintiffs contend that illiteracy was taken advantage of by fraud. Under such circumstances inability to read may show lack of negligence. Under the above circumstances we believe that the evidence justified the court in submitting to the jury the question of whether the plaintiffs in fact entered into the contract the defendant relied upon. It follows we find no error in the court's ruling in denying a directed verdict.

■ The defendant presents in this court an attack upon the sufficiency of the complaint. This is the first time that the defendant has challenged that pleading. It filed neither a demurrer nor a motion in the court below: it never objected to any evidence on the theory that the complaint failed to confer jurisdiction over the cause of action, and never claimed surprise. The worst that can be said against the complaint is that the cause of action is imperfectly and poorly stated; but, it nevertheless remains true that all of the elements of plaintiff's cause of

action are identified by it. When the attack is so long postponed all reasonable inferences are drawn in favor of the pleading: *Southeast Portland Lbr. Co.* v. *Heacock,* 128 Or. 248 (275 Pac. 28). We believe that the pleading should now be considered as sufficient.

We have very carefully considered all other matters presented in the defendant's brief. If it were not for the fact that we have held, that the agent's fraud in misrepresenting the nature of the instrument he presented for the plaintiff's signatures rendered voidable the agreements defendant seeks to enforce, it is possible that the court's ruling upon the first assignment of error might be considered erroneous. All other matters presented to us are determined in favor of respondents.

This decision should not be considered as an expression of an opinion upon our part as to the business methods of the defendant; we are required, under the circumstances, to give effect to the jury's verdict, and have set forth their conclusion and not ours.

AFFIRMED.   OBJECTION TO COST BILL ALLOWED.
REHEARING DENIED.

BEAN, MCBRIDE and RAND, JJ., concur.