Argued November 20, reversed and remanded December 31, 1956,
petition for rehearing denied February 6, 1957

# STATE OF OREGON *v.* GOURLEY ET AL

305 P. 2d 396
306 P. 2d 1117

*Edward M. Murphy,* of Roseburg, argued the cause for appellant. With him on the brief were Yates, Murphy & Carlson, Roseburg.

*D. C. Walton,* of Roseburg, argued the cause for respondent. With him on the brief were Geddes, Felker, Walton & Richmond.

Robert Y. Thornton, Attorney General and Thomas C. Stacer, Assistant Attorney General for Oregon, filed a brief as amicus curiae.

BRAND, J.

This is an action brought under OCLA, § 107-212, as

amended by chapter 234, Oregon Laws of 1941, by the State of Oregon against Peter Gourley, Phillip Gourley, and Levi Gourley, dba Gourley Brothers, a partnership hereinafter referred to as Gourley Brothers, and Empire Millwork Corporation, hereinafter referred to as Empire, to recover the cost of controlling and suppressing a forest fire. From a judgment for the defendants Empire and Gourley Brothers, plaintiff appeals.

The sufficiency of the complaint is not challenged and the respective answers of the defendants, although partially affirmative in form, constitute in legal effect general denials of the allegations of the complaint wherein it is charged that the defendants had a duty "to make every reasonable effort to control and extinguish said fire immediately its existence came to their knowledge, or at any time thereafter", and that they failed to perform such duty. They deny any liability to pay the reasonable cost incurred by the Forest Protective Association and the State Forester in controlling and extinguishing the fire. We turn to the evidence.

The fire started on 24 June 1951 on lands belonging to Empire. That corporation prior to and at the time of the fire owned a sawmill in Sutherlin, Oregon, employing approximately 100 men, and also owned more than 100,000,000 feet of timber from which logs were produced for the mill. Gourley Brothers were independent contract loggers under the terms of a written contract between themselves and Empire whereby they agreed to cut, remove and deliver logs from a portion of plaintiff's lands. There is no contention that either of the defendants caused the fire. Its origin was not explained. On a Sunday when

actual logging was not in progress the fire started near a landing in the logging area assigned to Gourley Brothers by Empire. Defendant Peter Gourley was at the landing when the fire started. With him were two employees of the partnership. They immediately attempted, without success, to extinguish the fire. Extensive logging had been done in the vicinity and there is evidence of large quantities of brush and debris on the ground in which the fire burned fiercely. The temperature was high and the humidity low. The fire burned on and over the described lands of Empire.

During the times in question the Douglas Forest Protective Association, a nonprofit association of land owners, was under contract with the State Board of Forestry to perform certain duties for the protection from fire of the area described in the contract, which area included the timber lands of Empire. Among the duties the association assumed were the following: To maintain lookouts, patrols, etc., and "Upon the occurrence of a forest fire, then (a) the Association shall promptly, diligently and to the best of its ability proceed to fight said fire and make every reasonable effort to control, suppress and extinguish it, and for said purposes will use all facilities available to it, or so much thereof as may be necessary * * *." The Association agreed further "To advance and pay all expense of furnishing and maintenance of said facilities and the use thereof in any service provided for in this agreement, whether such use be by the Association itself, or by or under the direction or control of the State Forester or his authorized representative." Among many other provisions we find the following:

"In consideration of the agreements herein contained on the part of the Association, and of the facilities to be furnished and the services to be

rendered by it pursuant to this agreement, the State Forester, under direction from the State Board of Forestry, shall report to the County Court of each county in which are situated Tax Roll lands as hereinabove defined, within said fire district, the cost of providing protection against the starting or spreading of fire on such Tax Roll lands in said county, as provided by section 107-243, O.C.L.A., together with ownership, legal description and acreage necessary to enable said County Court to levy the assessments provided for in said section 107-243. Such report to the County Court shall be made by the State Forester for the purpose of having such costs levied by said County Court and collected with the next taxes on such lands, as provided in said section 107-243.''

Provisions are made for repayment by the State Forester to the Association out of such funds as may be paid to him by the county court "up to but not in excess of the amount expended by the Association in furnishing protection for such lands * * *.'' Other provision is made for reimbursement of the Association from funds receivable from the Secretary of Agriculture under the Clarke-McNary Act, Public Law 392, 81st Congress. Certain limitations are imposed upon the amount which the State Forester can be required to pay to the Association. Under this contract the complaint alleges that:

"During the period from June 24, 1951, to August 27, 1951, both dates inclusive, the Douglas Forest Protective Association, which is a forest protective agency at all times mentioned herein under contract with the State Board of Forestry of the State of Oregon for the protection of forestlands against fire, and within whose protection area said fire existed, together with the Oregon State Forester performed the necessary and reasonable work to control and extinguish said fire and thereby

did control and extinguish said fire. The cost of so doing was the sum of $18,617.95 which sum was the necessary and reasonable cost of said work."

It is the contention of the defendants that under its contract the Douglas Forest Protective Association was under obligation to, and did detect the fire within a few minutes after it started, and immediately took charge of and attempted to control and extinguish the fire. They further contend that this was done not by reason of any failure of defendants but by reason of its duty under the contract. Empire asserts that it co-operated with the Association "to the fullest extent" in attempting to control and extinguish the fire, and Gourley Brothers contend that they took every reasonable effort in co-operating with the Association.

The parties are in substantial accord as to the main issue. From plaintiff's brief we quote:

"For the State to prevail in an action brought under 107-212 OCLA as amended, it must prove the following (1) Fire burning uncontrolled and/or without proper action being taken to prevent its spread. (2) Knowledge on part of owner, operator or person in possession that fire burning uncontrolled. (3) Failure on part of 'owner', 'operator', or 'person in possession' to make every reasonable effort to control and extinguish such fire. (4) Action by the state in controlling and extinguishing fire. (5) Reasonable cost of extinguishing fire. * * *"

The defendants state in their brief:

"The sole issue is as to whether or not the defendants respectively made every reasonable effort to control and extinguish the fire immediately when its existence came to their knowledge and continued such efforts until the fire was extinguished."

We turn to the statutes. The statute in effect at the times in question was OCLA, § 107-212 as amended by Laws of 1941, chapter 234, page 361, which reads as follows:

"Any fire on any forest land in the state of Oregon burning uncontrolled and/or without proper action being taken to prevent its spread, notwithstanding the origin of such fire, hereby is declared a public nuisance by reason of its menace to life and property. The owner, operator and person in possession of land, on which a fire exists, or from which it may have spread, or either or any of them, notwithstanding the origin or subsequent spread thereof on his own or other land, hereby is required to make every reasonable effort to control and extinguish such fire immediately its existence comes to his knowledge, without awaiting instructions from the forester or a warden, or ranger; and if such owner or person in possession shall refuse, neglect or fail so to do, the forester, or any forest protective agency under contract with the state board of forestry for the protection of forest land against fire, and within whose protection area the fire exists, shall summarily abate the nuisance thus constituted by controlling or extinguishing the fire, and the cost thereof shall be recovered from such owner or person in possession when necessary by action for debt, prosecuted in the name of the state of Oregon; and such cost shall constitute a lien upon the property of said owner. * * * ''

Following the portion quoted, the statute makes provision for the foreclosure of the lien, and then continues:

"* * * provided, however, that if the owner shall regularly pay a fire patrol assessment on such land and/or is a member in good standing of an organization approved by and under contract with the board, which organization has undertaken the control and suppression of fires on such

land, and such organization is actually engaged in the control and suppression of fire entering upon or which may be burning on such land, the owner shall not be subject to the penalties prescribed by section 107-211, or be held as maintaining a nuisance as defined in this section, unless he or his agent shall, through negligence or carelessness, be responsible for the origin of such fire, but such payment of fire patrol assessments and/or membership in an organization under contract with the board shall not relieve any owner or party in possession of land from the obligation imposed by this section to control and prevent the spread of fires if such land has theretofore become an operating area (as defined in section 107-201), and if, as a result thereof, an additional fire hazard has been created and exists thereon and has not been released by the forester. For the purpose of this act, notification to the owner, operator and person in possession of the land, or either or any of them, shall be considered good and sufficient notice to the owner of the existence of such fire." Oregon Laws 1941, ch 234, p 362.

It was provided that:

"* * * 'operation area' shall mean any legal subdivision upon which any activity for the removal or cutting of the forest crop is being conducted or has been carried on and the hazard created thereby has not been removed in accordance with section 107-222, or has not been released by the state forester." OCLA, § 107-201.

The lands of the defendant Empire consisted in part of unlogged forest lands and the remainder of forest lands which had been logged and which contained slashings and other inflammable forest debris. Pleadings and evidence show that the logged-off lands where the fire started had become an "operating area". The court so instructed and informed the jury

that said operating area had not been released by the State Forester. No exception was taken to such instructions. The defendant Empire was a member of the Douglas Forest Protective Association and paid fire protection fees or assessments to it. As indicated by the statute, such membership or payment did not relieve the defendants of any obligation imposed upon them to control and prevent the spread of fires, since the area in which the fire started was an "operation area" as defined by statute.

The contract between Empire and Gourley Brothers required the latter to comply with all laws with respect to logging, burning of slash and the protection of the land and timber from loss or damage by fire. They agreed to use the highest degree of care to control and extinguish at their expense any fires which might break out on the lands covered by the contract. Forest Inspector Cummings made out a notice to put out the fire and at his request Mr. Gourley signed it.

Evidence in behalf of Gourley Brothers showed that the fire started on the afternoon of Sunday, June 24th. Because it was Sunday the logging crew was not on the job, but by Sunday night about ten members of the crew were on the job, and when Peter Gourley returned at about 6 a.m. on Monday the whole crew of 20 men was at work. Two "cats" were being operated in the work as early as Sunday night.

Empire had no logging crew or equipment of its own except for the woods superintendent, a road supervisor, and a caterpillar tractor. They got to the fire on Sunday afternoon. The mill men were not sent to the fire until it was under control, when they were employed to "mop up". Empire relied in part at least on its membership in the Douglas Fire Protection

Association, called the DFPA, and on the work done by that association, and upon the contract with Gourley Brothers and the work done by them, as the means by which they performed their statutory duties. The facts which complicate this important and difficult case are to be found in the interrelations between the State Board of Forestry, the Fire Warden, the DFPA, defendant Empire, and Gourley Brothers.

Empire had a general duty as an owner of timber land to provide adequate protection against the starting or spread of fire. OCLA, § 107-241. It also had the duties imposed by OCLA, § 107-212, as amended, to make every reasonable effort to control and extinguish, which we will later consider in detail. No question is raised by the defendants as to the duty of Gourley Brothers also to make such effort. But then arises the fact that Gourley Brothers are bound by their contract with Empire (see supra) to use "the highest degree of care" to control and extinguish fires, and the question arises—can Empire perform its duty through Gourley Brothers? Next we have a real complication arising out of the relationship of the DFPA and the defendant Empire. That association under its contract with the State Board of Forestry had an independent duty irrespective of all other relationships to "make every reasonable effort" to control, suppress and extinguish a forest fire upon the occurrence thereof, and if the State Forester or any warden assumed direction and control of fire suppression activities the association was obligated to make all facilities available to him as ordered. On the other hand, Empire was one of the members of the association (DFPA) and Empire paid to it certain fees or assessments for the fire prevention services performed. Here the state is seeking to collect

from Empire the cost incurred by the association which it performed in part for its members, including Empire. Further, separate and independent duties were imposed by statute upon the State Forester and Fire Wardens. The Forester was required to take such action as is authorized by law to extinguish forest fires, OCLA, § 107-203, as amended by Laws 1943, chapter 34, and the fire wardens appointed by him are required to take proper steps for the extinguishment of fires. OCLA, § 107-205.

■ The ultimate question may be simply stated, as the parties and the Attorney General all agree. It is, did the defendants comply with OCLA, § 107-212 as amended? Whether they did or not was a question for the jury. It is our duty to construe the statute and then determine whether prejudicial error was committed in the giving or refusing to give instructions or in rulings on evidence.

We are dealing with the duties of the defendants with respect to fires on an operating area as defined. The statute is lacking in clarity and must be construed as a whole and within the context of the statutory system for fire prevention which has been adopted for the protection of Oregon's most valuable crop—timber.

The plaintiff-appellant State of Oregon first directs attention to the constitutionality of the act. Defendants do not challenge its constitutionality. The constitutionality of Oregon Laws, § 8960, the predecessor of the act with which we are concerned, was upheld in *State v. City of Marshfield,* 122 Or 323, 259 P 201. In that case, however, the facts were different. The defendant City of Marshfield took no action whatever to control the fire, and no other persons were called

upon to pay the cost of fighting the fire. The city was held liable, but the court said:

"* * * Many perplexing questions as suggested by counsel for appellant might arise if more than one party were called upon in the same action to pay cost of fighting fire upon different tracts of land, but such is not the instant case. We prefer to stick to the text and not discuss legal principles applicable to situations which do not exist. * * *"

See also, *Carter v. La Dee Logging Co.*, 142 Or 439, 18 P2d 234, 20 P2d 1086.

In the case at bar we are confronted by those "perplexing questions" to which the court referred in the Marshfield case.

■ Since we are concerned with an "operating area", a duty was clearly imposed upon "owner, operator and person in possession." This includes both defendants. Each, as soon as the existence of the fire came to his or its knowledge, was required to make every reasonable effort to extinguish the fire without awaiting instructions. It appears that a logging company engaged in logging on the owner's land is to be considered a person in possession, at least in a qualified or joint possession with the owner, for the remaining portions of the statute refer only to "owner or person in possession." There would have been no reason for expressly imposing duties on the "operator" in the first part of the act if no consequences were threatened for failure to perform that duty in the latter part thereof.

In *Carter v. La Dee Logging Co.*, supra, an independent contract logger was treated as one in such possession. Defendants in the pending case make no claim that the defendants Gourley as independent

logging contractors were not within the intent of the statute.

■ It is next provided that if "such owner or person in possession shall * * * fail so to do", that is, shall fail to make every reasonable effort to control and extinguish, the forester or any forest protective agency under contract with the State Board of Forestry, etc., shall abate the nuisance. At this point the parties are in disagreement as to the meaning of the act. Defendants contend in substance that both the DFPA and the State Forester had "ordinary and routine statutory and contractual duties" to fight the fire regardless of any failure of duty by the defendants. They then contend that if the forester and the DFPA did the work "merely" in fulfilment of those duties the defendants would not be liable to pay for the work done. They contend that defendants could be held liable only if the DFPA and the forester fought the fire *"by reason"* of the failure of Empire and Gourley Brothers to use every effort. (Italics ours.) It was based on this theory that the defendants alleged in their answers that the DFPA immediately sent a crew to fight the fire pursuant to its contract obligations "and did not take charge of and attempt to control and extinguish said fire *by reason* of any lack or failure on the part of said defendant * * * so to do." (Italics ours.)

We must reject this construction of the statute. The law does not contemplate that a jury trying such a case must determine for *what reason* the DFPA acted.

■ We continue with a consideration of the statutory provisions. The fact that the fire was not controlled is not conclusive proof that defendants failed to make every reasonable effort to control it. The failure

contemplated is a failure to make the required effort, not the failure to control the fire. We take judicial notice that there are forest fires which no reasonable effort can immediately control. The fact that the DFPA as an instrumentality of the state had a duty under its contract to fight the fire immediately upon receipt of knowledge thereof clearly demonstrates that it could not lawfully postpone such action until the evidence had piled up sufficiently to establish the failure of defendants to do their duty and while the fire burned uncontrolled. If the defendants' theory of the law were adopted we would be compelled to hold that whenever the DFPA performed its duty by taking immediate action it could never collect the cost of fighting the fire from a negligent land owner, no matter how grossly he might thereafter have failed in the performance of his independent duty. This would, in effect, emasculate the statute. We must, if possible, construe the statute so as to harmonize and give effect to all of its provisions.

■ We hold that both the defendants and the DFPA were required to start work at once. Their duties were independent. The statutory provision concerning the duty of the forest protective agency in cases of failure by the owner or person in possession adds nothing to the general duty which it had under its contract with the State Board of Forestry, except to provide that in event of failure by such persons the state may collect from them the costs which it would otherwise have to bear itself. Whether or not the defendants failed to do their statutory duty must of necessity be determined from a consideration of all the evidence concerning the duties and activities of the various instrumentalities which were required to engage in fighting the fire.

 We now come to the difficult question: What are the relevant elements which are to be considered in determining whether or not the defendants made every reasonable effort as required? In general we hold that in considering this question the jury should be entitled to consider all of the circumstances which would influence a reasonable man in determining what he should do to fully comply with the law. Plaintiff cites *Carter v. La Dee Logging Co.*, supra, for the proposition that the duty imposed on owners is nondelegable. We agree, by which we mean that an owner cannot, by merely making a contract with a logging company, divest himself of his statutory duty or of liability for a breach thereof. On the other hand, Empire, being a corporation, could only act per alium either through its employees, agents, or contractors. If Empire entered into a contract with Gourley Brothers by which the latter assumed the obligation on behalf of Empire to perform the full statutory duty of Empire and if Gourley Brothers fully performed that contract, then obviously Empire would not be liable.

 It is clear that the measure of Empire's statutory duty in this case is not the same as it would have been under the same statute if Empire was the only one having duties to fight the fire. To illustrate: Assuming that the duty to make every reasonable effort to control a particular fire would be fully satisfied by the employment of one-hundred men with specified equipment, and if the landowner was the only one charged with the duty, then the landowner would be required to furnish one-hundred men so equipped. But if the landowner knew that other parties having duties similar to his own were actually employing ninety men on the fire, he would not be obligated to employ one-hundred more men with the result that one-hundred-

and-ninety men would be employed on a job in which the statutory requirement would have been fully satisfied by the employment of one-hundred.

It would appear that in instructing the jury in a case of this kind the court should explain the duty imposed by statute, and then advise them that in determining whether a defendant had made every reasonable effort to control and extinguish the fire they should consider all of the circumstances which were known to the defendant, or in the exercise of reasonable care, should have been known to him, and should determine whether in view of those circumstances the defendant had made every reasonable effort to control the fire. The statutory or contractual duties of others than the defendants and the extent of their efforts made in performance of such duties so far as known to defendants, or so far as they should have been known to them, would be matters for the consideration of the jury in deciding whether under all the circumstances the defendants severally made every reasonable effort to control the fire. The duties, if any, of other private owners of timber whose lands were affected by the fire would depend upon whether or not such lands were an operating area and whether they were members of or contributors to the Forest Protective Association. See OCLA, § 107-212, supra.

In this case it was for the jury to say whether Empire by (1) its membership in and contribution to the DFPA and by (2) the efforts of Gourley Brothers performed for Empire under the contract between them, and by (3) the additional work done by Empire's own employees did or did not make every reasonable effort to control and extinguish the fire which occurred in the hazardous "operation area".

The plaintiff has taken exception to eleven instruc-

tions given by the trial court and to the failure to give two requested instructions. Similar contentions are made under most of these assignments. In view of this fact we have first set forth our conclusions as to the proper construction of the statute in order that the various instructions given or requested may be tested thereby. The court gave the following instruction to which exception was taken:

"In carrying out its legal duty to provide adequate protection against the starting and spreading of a fire upon timberlands of the defendant Empire Millwork Corporation and other similar timberlands in that vicinity, the plaintiff, State of Oregon, through its State Forester and State Board of Forestry, entered into a contract with the Douglas Forest Protective Association to carry out a part of the duties of the State Forester. In that connection, the Association had the duty relative to the lands of the defendant Empire Millwork Corporation to furnish and maintain lookouts and means of communications as the State Forester might require or prove as being adequate for the prompt detection and reporting of fires. It also had the duty, on the occurrence of the fire in question to promptly, diligently and to the best of its ability proceed to fight the fire and make every reasonable effort to control and suppress and extinguish it. This duty existed independently of any duty which was imposed upon the defendants but, of course, did not relieve the defendants of the duty which the law imposed upon them to use every reasonable effort to suppress the fire."

That instruction contained no erroneous statement of law. It did not, however, clearly explain to the jury that they were to consider the obligations and performance of the protective association (DFPA) only for such bearing as they might have on the ultimate question, which was whether the respective defendants

themselves made every reasonable effort to suppress and extinguish the fire. We fear that from the numerous instructions given which emphasized the duties of others than the defendants, the jury may have gained the impression that the mere existence of such duties regardless of how those duties were performed might relieve the defendants of their independent duties.

The second instruction given and to which exception was taken, reads as follows:

"If you should find that the State Forester, acting through one of its fire wardens or through the Douglas Forest Protective Association, assumed the duty of controlling and extinguishing the fire in question and did so in fulfillment of and because he and said Association had the legal duty to do so rather than because the defendants, or either of them, were not making every reasonable effort to control and extinguish the fire, if such be the fact, then the plaintiffs cannot recover anything from the defendants, or either of them and your verdict must be in such event for the defendants."

Clear and prejudicial error was committed in the giving of this instruction for the reasons previously set out in this opinion. In substance it amounted under the evidence to a peremptory instruction for defendant because there is no evidence that the DFPA assumed the duties of controlling the fire *because* the defendants were not making every reasonable effort.

Having found reversible error and having further set forth our views as to the proper construction of the statute on which the plaintiff's case depends, we deem it unnecessary to discuss all of the other assignments of error relating to instructions given as requested. We will, however, notice a portion of one instruction given with regard to the duty of Gourley Brothers. The court said:

"* * * In considering whether or not such loggers made every reasonable effort, you will consider the manpower and equipment resources available to them under all of the circumstances then existing."

■ Defendants had a duty not only to use the manpower and equipment available to them, but also to have available, or to procure such manpower and equipment as was reasonably required for the job.

■ Since the case must be retried, we express the opinion that the trial court erred in refusing to receive evidence concerning the conversation between Mr. Southwick, the district fire warden who was in charge of the fire, and Mr. Archibald, Empire's logging superintendent, set forth in assignment of error numbered three. There was evidence of a wide authority vested in Archibald to contract on behalf of Empire, and if he agreed that Empire would pay the bills incurred by the DFPA as indicated by the offer of proof, such agreement would be admissible as a declaration against interest. For similar reasons we also hold that the court erred in refusing to receive exhibit "G" which was a notice by the State Forester addressed to Peter H. Gourley, one of the defendants, dated the day after the fire started, directing Gourley to place sufficient men and equipment on the fire, etc., and which notice was indorsed as follows:

"I hereby accept responsibility for suppression of fire now burning on the above described lands and agree to proceed immediately to carry out the above instruction.

"Signed Peter H. Gourley
"(Owner
"(Authorized Representative".

In connection with some contentions made by the Attorney General as amicus curiae we observe that in any event at another trial the jury should be instructed that it is only such costs as were reasonably incurred for which the defendants could be liable in the event of their failure to perform their respective statutory duties.

The judgment is reversed and the cause remanded for a new trial.

## ON REHEARING

ON RESPONDENTS PETITION FOR REHEARING

Geddes, Felker, Walton & Richmond, of Roseburg, for the petition.

BRAND, J.

The defendants Gourley petition for a rehearing upon the ground that the "Amended Complaint fails to state facts sufficient to constitute a cause of action against these petitioning Respondents in that it affirmatively alleges that the Respondent, Empire Millwork Corporation, was the owner, operator or person in possession of the lands upon which the fire is alleged to have started and burned." The contention

appears to be that there is no allegation that the defendants Gourley come within the purview of the statute which provides that "The owner, *operator* and person in possession of land, on which a fire exists, or from which it may have spread, or either or *any of them*, * * * is required to make every reasonable effort to control and extinguish * * *." OCLA, § 107-212. (Emphasis ours). The argument seems to be that the allegation above-quoted concerning Empire Millwork Corporation as the owner, operator *or* person in possession amounted to an allegation that the defendants Gourley could not be charged under the same statute as operator or party in possession. First, we think Empire might be the owner, as the evidence proved, and the defendants Gourley could be the operators, and, for that matter, both groups of defendants might be alleged to be in possession. Second, the complaint alleges that the defendants Gourley "were actively engaged in a logging operation * * *." This was a sufficient allegation that they were "operators", and operators are expressly charged with the duty to make every reasonable effort to extinguish the fire. For reasons set forth in our opinion, we deem it highly questionable whether there was any necessity to allege that the Gourleys were *both* operators and persons in possession.

We have not overlooked the general rule that failure of a complaint to state a cause of action may be raised for the first time in this court. But that rule is not determinative of this question. It is equally well-established that in the absence of objection to the complaint in the court below, though the cause of action be imperfectly stated, the complaint will be considered sufficient on appeal. *Holmberg v. Pruden-*

*tial Savings & Loan Ass'n,* 130 Or 1, 278 P 943; *Murray v. Lamb,* 168 Or 596, 124 P2d 531; *Nicholson v. Jones,* 194 Or 406, 242 P2d 582.

We also have in mind the multitude of cases which hold that where the sufficiency of a pleading is not appropriately questioned below, all intendments are resolved in its favor and it will be liberally construed. Under the circumstances of this case we hold that the belated demurrer, presented for the first time in this court, must be overruled.

Even if we should hold that the complaint omitted a material allegation, namely, that defendants were *both* operators and persons in joint possession, we would not be required to reverse our previous decision. A fact apparently overlooked by counsel is that in the reply filed by the plaintiff to the answer of defendants Gourley it is expressly alleged that the defendants Gourley "were the operators *and party in possession* of forest lands described as follows: * * *." (Italics ours.) There was no objection to the filing of this reply.

We now quote from the authorities, as follows:

"* * * If the controversy raised by the reply had been stated as new matter in that pleading and not as a denial of the averments of the answer, there would have been no departure, but a mere enlargement of the averments of the complaint: * * *." *Skinner v. Furnas,* 82 Or 414, 161 P 962.

"* * * Ordinarily plaintiff cannot amend his petition by a reply or a supplemental petition, but, in the absence of any objection on the part of defendant, plaintiff's reply or supplemental petition may be considered as an amendment." 71 CJS 1168, Pleading, § 589 b.

"It is a generally accepted proposition of law that statements in the replication or reply cannot supply material allegations which should have been made in the declaration or complaint. But where the defendant waives allegations of curative matter in the plaintiff's responsive pleading by failure to object to it, the plaintiff's cause of action may be tested by his complaint and his reply, and the latter will be taken as supplying omissions from the former. * * *" 41 Am Jur 572, Pleading, § 402.

"* * * Another statement of the doctrine is that where the parties have attempted to join an issue to be tried, and it has been tried, however, defective in form the pleadings may be a verdict for the one or the other will be held to cure such defective pleadings, that is, will cure them as to their form, and supply all omitted necessary averments concerning essential facts relied on, provided the proof or admission of such facts was necessarily considered before the verdict was rendered, for the verdict must be assumed upon proof of facts which justified it. * * *" 41 Am Jur 573, Pleading, § 404.

Now let us see if the defendants Gourley waived any objection to the trial of the case against them on the merits. In their brief the defendants say:

"The sole issue is as to whether or not the defendants respectively made every reasonable effort to control and extinguish the fire immediately when its existence came to their knowledge and continued such efforts until the fire was extinguished."

We also observe that there was offered competent evidence that defendants Gourley accepted responsibility for suppression of the fire and they also pleaded that they made "every reasonable effort to suppress the fire", thus raising the very issue which was submitted to the jury. The petition for rehearing should be denied.

It has been suggested that the following excerpt from our former opinion is either ambiguous or misleading. We said:

> "Defendants had a duty not only to use the manpower and equipment available to them, but also to have available, or to procure such manpower and equipment as was reasonably required for the job."

It seems to be feared that from this sentence we intended to say that a person charged with duties under the statute must *at all times* have available on the ground or close by, sufficient manpower and equipment to successfully handle a fire, i.e., to extinguish it.

The entire tenor of our opinion was that "the job" imposed by statute is to make every reasonable effort to extinguish a fire and that what constitutes every reasonable effort depends upon all of the circumstances. If, under all of the circumstances, a given amount of equipment and manpower was reasonably required of the *particular owner or operator,* he could not excuse himself for failure to *have or procure* the required amount. In a word, a timber owner or operator could not send a boy to do a man's job, and then claim that he had made every reasonable effort. We think our opinion was not subject to any other interpretation.

The petition for rehearing is denied.