Argued and submitted May 15, 1981, reversed and
remanded June 9, reconsideration denied July 22,
petition for review allowed September 14, 1982 (293 Or 512)

STATE OF OREGON, Acting by and
through its DEPARTMENT OF FORESTRY
by and through J. E. SCHROEDER,
State Forester,
*Respondent,*

*v.*

COLUMBIA BASIN ELECTRIC
CO-OP, INC,
*Appellant.*

(No. 2536, CA 18390)

646 P2d 96

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Robert F. Riede, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Paul E. Geddes and Geddes, Walton, Richmond, Nilsen & Smith, Roseburg, filed a brief amicus curiae for Oregon Rural Electric Cooperative Association.

Charles F. Hinkle, Arnold L. Gray, and Stoel, Rives, Boley, Fraser and Wyse, Portland, filed a brief amicus curiae for Pacific Power & Light Company.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this civil action, plaintiff Oregon Department of Forestry was awarded a money judgment against defendant Columbia Basin Electric Co-op, Inc., for the cost of suppressing a forest fire after the trial court, on plaintiff's motion for partial summary judgment, ruled that defendant was liable for the suppression costs as a matter of law under ORS chapter 477.[1] Defendant appeals from the resulting judgment. We reverse and remand.

Defendant is an electrical cooperative that erects and maintains power transmission lines, some of which pass through forest lands. On July 26, 1976, a fire started as a result of a tree falling across one of defendant's power lines, breaking it. By the time defendant's employes arrived at the scene to repair the line, the fire had burned 300 to 500 acres of forest land and was out of control. At the direction of plaintiff's employe in charge of suppressing the fire, defendant's employes cut the portion of the tree that had fallen across the power line and restored the line. They then left the area without doing anything further to aid in the fire fighting.

There is no dispute that plaintiff incurred costs of $28,714.32 in suppressing the fire. The issues are: (1) whether defendant is excluded from the exemption from statutory liability because it "caused or permitted an operation to exist" on forest land; (2) if so, whether there is a genuine issue of fact as to whether the fire originated as a result of the operation, and (3) whether there is a genuine issue of fact as to whether defendant made every reasonable effort to aid in suppressing the fire after becoming aware of it.

Liability for costs incurred by plaintiff in fighting forest fires is imposed on owners of forest land only in certain circumstances. Under ORS 477.066, *infra,* each owner[2] or operator of forest land has a duty to "make every

---

[1] Plaintiff's second cause of action for negligence was dismissed without prejudice by the trial court. Plaintiff did not appeal the dismissal. Third-party defendant, Kinzua Corporation, is not involved in this appeal.

[2] ORS 477.001(16) provides:

reasonable effort to control and extinguish" a fire that exists on or spreads from the owner's or operator's land, or from which it may have spread, notwithstanding the origin. Failure to perform the duties imposed by that section subjects the owner or operator to liability for the actual cost of fighting the fire.[3]

Specific exemptions from that liability are afforded an owner or operator under ORS 477.120(1), which provides:

"Except as provided in subsection (2) of this section, neither the owner nor operator of forest land is subject to the obligations or penalties of ORS 164.335 and 477.740 or 477.064, 477.066 and 477.068 if:

"(a) Forest patrol assessments are regularly paid for the forest land; or

"(b) Such forest land is protected pursuant to membership in a forest protective association in accordance with ORS 477.210 [formerly 477.024], which association has undertaken the control and suppression of fires on such land as provided in the contract; or

"(c) Such forest land is protected pursuant to cooperative agreement or contract under ORS 477.406."

The exemption provided by subsection (1)(b) of that section applied to defendant. Under ORS 477.120(2), however, an owner or operator does not qualify for any exemption if:

" * * * * *

"(a) He is wilful, malicious or negligent in the origin of a fire on such forest land; or

---

" 'Owner' means an owner, easement holder or person in control or possession of land. For this purpose an 'easement holder' is any person owning, holding or using an easement, right of way, permit, license or other similar interest to cross or use forest land."

Defendant concedes that it is an easement holder and, therefore, an owner within the definition.

[3] ORS 477.068(1) provides:

"In case an owner or operator fails to make the effort required by ORS 477.066, or is wilful, malicious or negligent in the origin of the fire, the actual cost incurred by the forester or a forest protective association or agency in controlling or extinguishing the fire shall be paid by the owner or operator within 90 days after the date on which the first written demand for payment of the actual cost is mailed by the State Forester to the owner or operator. * * *"

"(b) *He has caused or permitted an operation to exist* on such forest land and a fire originates thereon while the operation is in progress or as a result of the operation; or

"(c) He has failed to give notice to the forester pursuant to subsection (1) of ORS 477.580 or he has failed within the time prescribed in any order or notice issued by the forester to reduce, abate, or offset any hazard determined to exist pursuant to ORS 477.062 or 477.580 and a fire originates on or spreads to the area on which such hazard exists and for which no release has been granted pursuant to subsection (3) or (4) of ORS 477.580." (Emphasis supplied.)

I

■ The first question is whether defendant "caused or permitted an operation to exist" within the meaning of ORS 477.120(2)(b). If so, it does not qualify for the exemption from liability afforded by ORS 477.120(1). The answer depends on the meaning of "operation" as used in the statute. That word is defined in ORS 477.001(13) as:

"* * * any industrial activity or any development or *improvement* on forest land, or within one-eighth of one mile of forest land, *including but not limited to* the clearing of land or rights of way, logging or sawmilling, thinnings or prunings, excluding, however, the culture and harvesting of agricultural crops." (Emphasis supplied.)

Plaintiff argues that the statutory language is clear and unambiguous; therefore, it must be given its plain meaning. *See Molalla Pump v. Chaney,* 42 Or App 789, 791, 601 P2d 874 (1979). It reasons that because the power transmission line is an "improvement" on forest land, it is an "operation" by definition. Defendant contends that, even though the transmission line may be an improvement in the general sense, a literal reading of the statute would create a harsh result at variance with the legislative intent. It relies on *Johnson v. Star Machinery Co.,* 270 Or 694, 703-04, 530 P2d 53 (1975), where the court said:

"* * * [T]he rule requiring the court to follow the plain meaning of seemingly unambiguous language is not inflexible and not without exceptions. Hence, if the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result, the literal interpretation must give way and the court must look beyond the words of the act. * * *"

This is not such a case: the literal import of the words is not at variance with the apparent policy of the legislative scheme. Accordingly, there is no need to look beyond the statute. The policy is expressed in ORS 4 77.005:

"(1) The preservation of the forests and the conservation of the forest resources through the prevention and suppression of forest fires hereby are declared to be the public policy of the State of Oregon.

"(2) In order to accomplish the purposes of the policy stated in this section:

"(a) The need for a complete and coordinated forest protection system is acknowledged; and

"(b) *This chapter shall include all persons and activities designated in this chapter, irrespective as to whether or not such person or activity is concerned with the harvesting, cutting, removal or marketing of trees, timber or other forest products."* (Emphasis supplied.)

Defendant urges us to apply *ejusdem generis* to limit "improvements" as used in ORS 477.001(13) to those resulting from logging, sawmilling, thinnings or prunings, *i.e.*, to construe the general word to be limited by the words that follow. Assuming the need to resort to rules of statutory construction, the rule embodied in *ejusdem generis* is applicable where specific words are followed by general words. In *Hodges v. Real Estate Div.*, 40 Or App 243, 247, 594 P2d 1286 (1979), we applied that rule of construction where specific types of inducements were enumerated in a statutory prohibition, followed by the general words "or other inducement." We held that the other inducements must be of the same class or nature as those specifically enumerated. The reverse is true here: the general word "improvement" is followed by the words "including but not limited to," which are words of expansion rather than words of limitation.[4]

---

[4] In 2A Sutherland on Statutory Construction (4th ed C.D. Sands 1973) (Supp 1981), § 47.07, it is stated:

"A term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning by construction than where the definition declares what a term 'means.' Thus, it has been said that 'the word "includes" is usually a term of enlargement, and not of limitation. . . . It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated. . . .'"

We do not believe that applying the plain meaning of the word "improvement" results in a deviation from the legislative policy embodied in ORS chapter 477 viewed as a whole, or in a harsh or unreasonable imposition of a duty to aid in the suppression of a forest fire after knowledge of its existence. Accordingly, we conclude that the word as used in ORS 477.001(13) includes a power transmission line and that the power line, therefore, constitutes an "operation" within the meaning of ORS 477.120(2). The result is that defendant is not exempt from liability under ORS 477.066.

## II

■ Defendant contends that, even if it is not exempt from statutory liability, there is a genuine issue of material fact as to whether the fire "resulted from the operation" within the meaning of ORS 477.120(2). There is, however, no dispute that the fire was started on defendant's easement when a tree fell over the power line, breaking it. Apparently, the argument is that the power line must have been a substantial cause, "rather than a simply *a* cause," and that whether it was a substantial cause is a question of fact precluding summary judgment.

Whether the statute requires the operation to be a substantial cause of the fire is a question of law. The language of ORS 477.120(2)(b) bears repeating:

"(2) The provisions of subsection (1) of this section do not apply to such owner or operator if:
* * * * *
"(b) He has caused or permitted an operation to exist on such forest land and a fire originates thereon while the operation is in progress or as a result of the operation * * *."

It is clear from the language that, if the operation is in progress when the fire starts, the owner is not exempt from liability if the fire *originates* on the owner's forest land. Causation is irrelevant. That provision is consistent with the section that imposes on the owner the duty to suppress a fire which "exists or from which it may have spread, notwithstanding the origin or subsequent spread thereof." ORS 477.066. It is also clear that if the operation is not in progress, the owner is not exempt from liability if a fire

originates on the owner's forest land "as a result of the operation."

Given the statutory scheme and the specific language of ORS 477.120(2)(b), we conclude that it is sufficient to exclude the owner from the exemption if the "operation" was a cause-in-fact of the fire. Here, there is no dispute that the power line was *a* cause — the fire would not have started without the power line being there. There is no issue of fact, and the trial court did not err in its application of the statute as a matter of law.

## III

■ Having concluded that defendant is not exempt from the statutory liability and that the fire resulted from defendant's operation, it remains to be considered whether there is a genuine issue of material fact as to whether defendant met its statutory duty under ORS 477.066(1), which provides:

> "(1) Each owner and operator of forest land on which a fire exists or from which it may have spread, notwithstanding the origin or subsequent spread thereof, shall make every reasonable effort to control and extinguish such fire immediately when its existence comes to his knowledge, without awaiting instructions from the forester, and shall continue until the fire is extinguished."

Plaintiff alleged, and was required to prove, that defendant had failed to "make every reasonable effort to control or extinguish" the fire. On the motion for partial summary judgment, a deposition of one of defendant's employes established that defendant did not know of the fire on its easement until he and another employe went up to the area to check on a broken line report. At that time, defendant's employes were told by plaintiff's employe in charge of fighting the fire to cut off the tree where it had fallen across the line so that defendant could get its line back up and plaintiff could clear its fire trail. At that time, the fire was out of control, having burned over 300 to 500 acres, and the Forestry personnel and equipment were vigorously fighting the fire.

■ Whether an owner has made every reasonable effort to control or extinguish a fire has generally been considered one of fact for the jury. See *State v. Gourley*

*et al,* 209 Or 363, 305 P2d 396, 306 P2d 1117 (1956), *reh den* (1957); *State ex rel State Forester v. Estremado,* 45 Or App 967, 609 P2d 893 (1980). In those cases, the defendants were timber harvesting operators. We are aware of no cases where the defendant, as here, was not a timber operator, but when the statute imposes a standard of reasonableness, all of the circumstances may be considered in determining whether the defendant made every reasonable effort.

In *Gourley,* the court said:

> "We now come to the difficult question: What are the relevant elements which are to be considered in determining whether or not the defendants made every reasonable effort as required? In general we hold that in considering this question the jury should be entitled to consider all of the circumstances which would influence a reasonable man in determining what he should do to fully comply with the law. * * *" 209 Or at 378.

Here, the trial court stated that defendant had failed to make *any* effort whatsoever and concluded that, as a matter of law, defendant had not satisfied its statutory duty. There was, however, some evidence that defendant had followed the instructions of the forester in charge of fighting the fire and that plaintiff's firefighting personnel and equipment were already fully engaged in fighting the fire, which was out of control. Whether defendant's doing only what the forester in charge had requested, under all of the circumstances, satisfied the statutory requirement presents a genuine issue of material fact, precluding a summary judgment.

Reversed and remanded.

**WARDEN, J.,** dissenting.

Because I would simply reverse the decision of the trial court and not remand the matter for further proceedings, I dissent.

The majority concludes that the defendant is not exempt from the liability imposed by ORS 477.066, because by maintaining a power transmission line it "caused or permitted an operation to exist," ORS 477.120(2), and therefore did not qualify for the exemption provided in ORS 477.120(1). The majority reaches that result from the

fact that ORS 477.001(13) includes "improvement" in its definition of operation by "applying the plain meaning of the word 'improvement'." The trouble with that analysis is that the majority do not apply the plain meaning of "improvement," certainly not the plain meaning which the legislature intended. The word "improvement" in ORS 477.001(13) is used in its active sense and not in the passive sense ascribed to it by the majority. Webster's Third New International Dictionary gives as its first definition of improvement "the act or process of improving." It is in that sense, not in the sense of the result of an act or process, that the word improvement is used in the statute. The examples of "operations" in the statute are all of ongoing activities, not finished projects. They are: "clearing of land or rights of way, logging or sawmilling, thinnings or prunings." Likewise, the exclusions, "the culture and harvesting of agricultural crops," from the definition of "operation" are activities and not the final results thereof.

The legislative history also indicates that "improvement" was meant in its active, not its passive, sense. The word was added to ORS 477.001(13) in 1973. Or Laws 1973, ch 46, § 1. The minutes of the House Agriculture and Natural Resources Committee considering the amendment clearly show that the committee members were concerned with responsibility for fires from "slash" or "slashings." ORS 477.001(20) defines "slashing" as "the forest debris or refuse on any forest land resulting from the cutting, killing, pruning, severing or removal of brush, trees or other forest growth." There is nothing in the minutes to indicate that any member of the committee was concerned with completed structures, such as defendant's power line, located on forest lands. Their concern was with activities which create or leave slashings. These are the kinds of activities given as examples of "operations" in ORS 477.001(13), i.e., "clearing of land or rights of way, logging or sawmilling, thinnings or prunings."

Because a completed power transmission line is not an "improvement" as that word is used in ORS 477.001(13), it is not an operation within the meaning of that statutory section, and because fire patrol assessments had been paid on the forest land in question, defendant should have been

exempted from the duties imposed by ORS 477.066 and should not be held liable for fire suppression costs.

I would reverse without remand and, therefore, respectfully dissent.