Argued and submitted May 20, affirmed in part, reversed in part and remanded August 24, reconsideration denied September 30, petition for review denied November 1, 1983 (295 Or 841)

## STATE OF OREGON, by and through its DEPARTMENT OF FORESTRY, by and through its STATE FORESTER, *Appellant,*

*v.*

## JEPSON & SONS LOGGING COMPANY et al, *Respondents.*

(28683; A25642)

668 P2d 461

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Michael A. Lehner, Portland, argued the cause for respondents. With him on the brief was Mitchell, Lang & Smith, Portland.

Charles F. Adams, Portland, filed a brief amicus curiae for Industrial Forestry Association.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action at law by which the State of Oregon seeks damages for costs incurred in suppressing a forest fire. Defendants were engaged in a logging operation, and the fire originated at the location of a slash burn conducted by defendants several weeks earlier. When the fire escaped defendants' control, the state supplied men, equipment and materials to combat it. The state claimed that defendants failed to assert every reasonable effort to control and extinguish the fire and that they were therefore liable to the state pursuant to ORS 477.066 and ORS 477.068.[1] The state also alleged that defendants were strictly liable to the state because slash burning is an ultrahazardous activity.

The case was tried to a jury. At the close of the state's case the court granted defendants' motion for a directed verdict on the strict liability count. A verdict was returned in favor of defendants on the statutory count.

The state assigns as error the denial of its motion for a judgment notwithstanding the verdict on the statutory claim,

---

[1] ORS 477.066 provides:

"(1) Each owner and operator of forest land on which a fire exists or from which it may have spread, notwithstanding the origin or subsequent spread thereof, shall make every reasonable effort to control and extinguish such fire immediately when its existence comes to his knowledge, without awaiting instructions from the forester, and shall continue until the fire is extinguished.

"(2) If the owner or operator fails so to do, or if the fire is burning uncontrolled, the forester, or any forest protective association or agency under contract or agreement with the board for the protection of forest land against fire, and within whose protection area the fire exists, shall summarily abate the nuisance thus constituted by controlling and extinguishing the fire."

ORS 477.068 provides in part:

"(1) In case an owner or operator fails to make the effort required by ORS 477.066, or is wilful, malicious or negligent in the origin of the fire, the actual cost incurred by the forester or a forest protective association or agency in controlling or extinguishing the fire shall be paid by the owner or operator within 90 days after the date on which the first written demand for payment of the actual cost is mailed by the State Forester to the owner or operator. If the actual cost is not paid within such 90-day period, the actual cost may be recovered from such owner or operator by an action prosecuted in the name of the State of Oregon, or such forest protective association or agency, or both. In any such action, recovery for the plaintiff shall include, in addition to the amount of the actual cost, interest on such amount at the rate of six percent per year from the date on which the first written demand for the payment of the actual cost was mailed by the State Forester."

the granting of defendants' motion for directed verdict on the strict liability claim, the trial court's exclusion of evidence of defendants' written statement to accept responsibility for the state's costs and the trial court's instruction to the jury that they were to render a verdict for defendants if they determined that defendants had made "reasonable effort" to control and extinguish the fire. We reverse on the evidentiary and instruction rulings.

The land involved is owned by the United States Bureau of Land Management (BLM). Defendants contracted with the Fort Hill Lumber Company, the owner of the timber on the land, to cut and haul it to a mill. The contract specified that defendants were to burn the remaining slash in September and October, 1980.

In September, 1980, Yates, a forester for the State Department of Forestry, defendant Delmar Jepson and a BLM representative met at the site to discuss the plan for burning the slash. They tentatively agreed on a plan, and the state issued a slash burn permit to burn 25 acres. On September 24, 1980, the burn was conducted without problems. The slash continued to smolder, and Yates asked defendants to patrol the site daily. Defendants patroled the site all that day and into the evening. On September 30, Yates warned Delmar Jepson that high winds were expected. Defendants placed extra workers and equipment at the site and kept the fire under control.

At 8:30 a.m. on October 9, Yates warned defendant Dennis Jepson of strong, dry winds. At the time, Jepson was on his way to check another logging operation near the burn site. That morning, Rogers, a state forester, was in the area with a team performing work. He was about four miles from the burn site. The team noted strong east winds and saw smoke coming off the burn site. At 9 a.m., Rogers called Yates and informed him of the smoke. Yates told Rogers that the Jepsons were supposed to be observing the burn site but that Rogers and his team should go to the area to determine if there were any problems. When Rogers arrived, the burn site was smoking. Dennis Jepson and a crew of about six were working. They had two 500-gallon pumpers and a D-5 tractor. The winds were 35-40 miles per hour. Rogers sent members of his team to try to contain the fire. Jepson was on a tractor making a fire break

around the fire. The fire jumped a break originally built to contain the slash burn and burned in some 15-year-old reproduction trees with slash and brush underneath. Yates arrived about 10:30 a.m. The fire continued jumping the fire break at various places. Two state water tankers arrived to help fight the fire. Jepson called for more men from Siletz, a one-hour drive from the burn site, where most of them lived. Eight men arrived later.

Until about noon, Yates thought that Jepson and his team, working with the state's workers and equipment, would be able to control the fire. However, it escaped, and the workers who had been fighting it needed rest. Yates and Jepson then discussed ordering additional help. The state then took over the direction of the fire-fighting effort, because Jepson was working on the tractor.

Dennis Jepson agreed that the fire was out of control and that additional men, equipment and materials were needed. Forty men, one load of retardant, two 1,000-gallon tankers, one 2,600-gallon tanker, two 500-gallon tankers, two tractors and one helicopter were ordered. Jepson signed a form titled "Record of Fire Condition" to that effect. Several times before the fire was eventually extinguished, Jepson signed similar "Record of Fire Condition" forms acknowledging the need for additional workers, equipment and materials, and forms titled "Request for Assistance on Fire," requesting that the state supply specified workers, equipment and materials to combat the fire.

The "Record of Fire Condition" form stated in pertinent part:

> "In accordance with the provisions of ORS 477.066 and 477.068, you are required to make every reasonable effort to control and extinguish this fire. Continuing your present efforts and complying with the 'needs' listed in 1, 2 or 3 above, and all subsequent instructions of the forester will satisfy this requirement. This record constitutes notice of the fire."

The "request for assistance" form stated, in relevant part: "The above named company agrees to pay all wages, cost of equipment and other expense incurred under this order." Dennis Jepson testified that he signed the forms because he felt the need for more workers and equipment to fight the fire. He had supplied every worker and piece of equipment he had, but more

help was needed. Workers fought the fire until about 8 p.m., when a night crew arrived and continued the work. The fire was contained by about 6:15 p.m. on October 9, and finally controlled about 7 a.m. on October 10.

The state sought to admit the "Record of Fire Condition" and "Request for Assistance" forms signed by Jepson. Over the state's objection, the trial court excised from those forms the clause in which defendants agreed "to pay all wages, costs of equipment and other expense incurred under this order." The state argues that the excised matter was admissible as substantive evidence, in the form of a declaration against interest, of defendants' failure to use every reasonable effort to extinguish the fire. Alternatively, the state argues that the matter was admissible as impeachment evidence to contradict Dennis Jepson's testimony that he did not assume responsibility for the extra workers, equipment and retardant.

The state asserts, and we agree, that this issue is controlled by *State v. Gourley, et al,* 209 Or 363, 305 P2d 396, 306 P2d 1117 (1956). There the state sought recovery for fire suppression costs under a similar statutory scheme which preexisted current legislation. Defendants were required "to make every reasonable effort to control and extinguish said fire immediately after its existence came to their knowledge, or at any time thereafter." OCLA § 107.212. One issue was the admissibility of an agreement to accept responsibility, signed by one of the defendants, that is very similar to the agreement here. The court held that the agreement was admissible as a declaration against interest. *State v. Gourley, et al, supra,* 209 Or at 382. The defendants' responsibility in *Gourley* was based on the same standard that applies here, *i.e.,* whether they had made "every reasonable effort" to stop the fire. We conclude that the trial court erred in ruling that the entire agreement was not admissible.

Defendants contend that, even if the agreement is a declaration against interest, its prejudicial value outweighs its probative value. They assert that a "jury would most likely not be able to distinguish between the contractual implications of the promise to pay, and the standard of behavior which should be the focus of their attention."[2] Similar concerns were raised

---

[2] The state's initial complaint in this case purported to state a claim for breach of contract based on defendants' failure to pay as promised in the Request for Assistance.

in *Gourley*. A limiting instruction would solve the problem. *State v. Gourley, et al, supra,* 209 Or at 383.

■        The state also assigns as error the giving of the following instruction:

> "In summary, it is your duty and responsibility to determine whether or not the defendants in this instance made reasonable effort to control and extinguish the fire. If they did so, you feel they did under the circumstances and criteria that I have given you, then your verdict should be for the defendants. If they failed to satisfy you that they made reasonable effort to control and extinguish the fire, then of course, your verdict should be for the plaintiff."

The state contends that this instruction, which eliminated the word "every" from the phrase "every reasonable effort," was error because it was an incorrect statement of the law and that, because it was read to the jury last, its placement gave it extra emphasis and "tainted" the instructions as a whole. Defendants acknowledge that the instruction was error. They argue that it was harmless error in light of the often-repeated correct phrase of "every reasonable effort" in other instructions and in the state's closing argument. The court acknowledged the error but declined to recall the jury and reinstruct them. On retrial, the instruction ought not be given.

        The state also assigns as error the trial court's failure to grant its motions for a directed verdict and for judgment notwithstanding the verdict on its first cause of action. The state's motions were both based on the premise that reasonable people could draw only one conclusion from the evidence, *i.e.,* that defendants failed to exert every reasonable effort to control and extinguish the fire and were, therefore, liable for the state's suppression costs. The state's argument can be summarized as follows: Because the evidence established that it took a certain amount of equipment to control and extinguish that fire, and because defendants did not supply that equipment, no reasonable mind could fail to conclude that defendants did not make every reasonable effort to control and extinguish the fire. The state argues that defendants could not be excused by the fact that they provided all the manpower

---

Defendants' motion to dismiss that complaint for failure to state a claim was allowed. That ruling has not been challenged on appeal.

available to them. *State v. Gourley, et al, supra,* 209 Or at 382. In essence, the state's theory would make ORS 477.066(1) a *per se* duty to provide all the manpower and equipment *necessary* to contain a fire.

■■■■ Although it imposes a very high standard, it does not impose an absolute duty. It requires "every reasonable effort." The question whether a person made every reasonable effort to extinguish a fire is generally one of fact for the jury. *State ex rel State Forester v. Estremado,* 45 Or App 967, 970, 609 P2d 893 (1980). It is not our function on review to determine whether defendants made every reasonable effort. We determine only whether reasonable minds could differ on the question, and, in doing so here, we resolve all conflicts and construe all permissible inferences in favor of defendants. We cannot say that there was no evidence on which the jury could have found for them. As we noted in *Estremado,* even if little dispute exists as to the facts, differing conclusions may reasonably be drawn therefrom. *State ex rel State Forester v. Estremado, supra,* 45 Or App at 972. We find no error.

The state's last assignment challenges the propriety of the trial court's granting defendants' motion for a directed verdict on its second cause of action. The state sought recovery on the theory that defendants engaged in an ultrahazardous activity when they conducted the slash burn and were therefore strictly liable for any resulting damages, *i.e.,* the suppression costs. The trial court granted defendants' motion for a directed verdict, finding both that the proof failed to satisfy the criteria set out in *Koos v. Roth,* 55 Or App 12, 637 P2d 167 (1981), *aff'd* 293 Or 670, 652 P2d 1255 (1982), and that ORS ch 477, which governs fire suppression costs, does not fall within the parameters of *Koos v. Roth, supra.* We conclude that this is not a case for application of the doctrine of strict liability.

■■■■ The circumstances here are not the same as those in *Koos v. Roth, supra.* There a neighboring landowner sought to recover damages resulting from a field burning fire which escaped control. Here, the state seeks recovery for costs incurred in controlling a fire in order to insure that damage was not inflicted on neighboring lands. As noted in *Koos,* the field burning legislation was directed only to pollution control and did not address fire danger. In contrast, the legislature has

promulgated an extensive statutory scheme governing the suppression of forest fires and the payment of the costs incurred in suppression. We need not determine whether an activity is so exceptionally dangerous as to warrant imposition of strict liability when legislators already have recognized the danger by subjecting the activity to stringent regulations. *Koos v. Roth, supra,* 293 Or at 686. We conclude that the legislature, in adopting these statutes, undertook to define the liability to be imposed on a defendant for fire suppression costs. We will not alter or amend that liability on a theory of strict liability.

Affirmed in part; reversed in part; and remanded.